Merrimack,
No. 5850.

BERNIER BROTHERS

*v.*

ERNEST BIRON.

Argued June 3, 1969.
Decided October 31, 1969.

*Upton, Sanders & Upton* and *Robert V. Johnson, II* (*Mr. Johnson* orally), for Bernier Brothers, Inc.

*George P. Cofran* and *L. Wilder Quint* (*Mr. Quint* orally), for Ernest and Robert Biron and Biron & Sons, Inc.

LAMPRON, J. Action in assumpsit by Bernier Brothers, Inc. against Ernest and Robert Biron to recover for timber and cordwood sold and delivered. This count was withdrawn following the granting of an amendment adding a count of trespass alleging that plaintiff was the owner of certain trees having value as timber and suitable for pulp or fuel which defendants Ernest and Robert Biron, individually, wrongfully burned. Subsequently Biron & Sons, Inc., of which Ernest and Robert Biron are officers, brought a cross-action against Bernier Brothers, Inc. for breach of a contract to clear a portion of land including that on which stood the timber which is the subject matter of

the count in trespass or conversion brought by Bernier Brothers, Inc., against the Birons individually.

After two and a half days of trial by jury, and before completion of all the evidence, the parties agreed that the evidence could be considered closed. The Trial Court (*Griffith*, J.) withdrew from the jury the conversion action of Bernier Brothers, Inc. against Ernest and Robert Biron; ruled on plaintiff's requests for findings and rulings; made additional findings and rulings of its own and dismissed the action. Plaintiff's exceptions thereto were reserved and transferred. There is no transcript of the testimony. Consequently consideration of these exceptions must be based on the record before us which consists of the reserved case containing the pleadings, the pre-trial order, Bernier Brothers requests, as plaintiff, for findings of fact and rulings of law; the Trial Court's findings, rulings and order; the transcript of a hearing on a proposed reserved-case, and the exhibits. *Haverhill Journal* v. *Southwick Constr. Co.,* 109 N. H. 81.

Landers and Griffin, Inc. and Morrison-Knudson Co., Inc. (hereinafter referred to as "Landers") had a contract with the State of New Hampshire to construct a part of Route 93 in Sanbornton. On January 10, 1963, Biron & Sons, Inc. entered into a contract with Landers to clear of woods and timber, for the unit price of $375 per acre, certain tracts of land in this project, including some 20 acres taken by the State from Iva Eastman. Shortly thereafter, Biron & Sons hired Bernier Bros., Inc. "to complete portion of the clearing" on this same project at the same unit price.

The Landers contract with the State contained the following specifications which were made a part of its contract with Biron & Sons, which, in turn, made them a part of its contract with Bernier Bros:

"Trees suitable for pulp or fuel, if desired by the abutter, shall be cut into 4-foot lengths without being split, and piled at accessible locations on the property of the abutter. Wood of this category, except elm wood, larger than 4 inches in diameter shall be considered suitable for pulp or fuel and shall not be burned.

"All trees, including trees suitable for timber, pulp, or fuel which are not desired by the abutter, and all stumps, roots, branches, brush, weeds and other objectionable material resulting

from the clearing and grubbing operations shall be burned or otherwise disposed of."

The Court found that: "In accordance with . . . [its] agreement, Bernier Brothers began some time early in January, to clear a portion of the right of way, beginning on the Gauthier property and running up into the Eastman property. In all, prior to the weather requiring them to quit, they cleared some six plus acres, three on the Gauthier property and three acres on the Eastman property. The wood cut on the Eastman property was burned by the Berniers at that time.

"Simultaneously with entering into the work with Biron & Sons, Inc., Bernier Brothers had purchased from Iva Eastman all the timber on the strip to be taken. This had been purchased for the sum of two hundred fifty dollars, plus certain wood to be delivered to Miss Eastman, having a fair value of between fifty and one hundred dollars.

"Shortly before Bernier Brothers, Inc. stopped clearing work, Cyril Bernier, an authorized officer of Bernier Brothers, Inc., spoke to Robert Biron, the son and operating head of the clearing for Biron & Sons, Inc., telling him of their purchase from Iva Eastman and suggesting that Biron & Sons, Inc., might wish to purchase their interest which they would sell for three hundred fifty dollars, the price they had paid for it. Robert Biron indicated that they would accept this offer, but that he required his father's agreement in order to consummate the purchase. A day or so later Robert Biron informed Cyril Bernier that they did not intend to purchase and would not purchase Bernier Brothers' interest in the Iva Eastman strip. Cyril Bernier then said, "Very well, we will hold you to the specifications in the contract [hereinbefore set out] . . . .

"In the Spring of 1963 when work could again be resumed, Bernier Brothers, Inc. refused to do any more work in the area and Biron & Sons, Inc. completed the clearing operation. They burned all of the material which was cut on the remaining Eastman land.

"The Court finds that the land in the Eastman strip consisted of approximately twenty acres, and that since three acres had already been burned by the Berniers there remained some seventeen acres, which is the focus of the present dispute.

"The Court finds that there were approximately, from the

testimony, some two hundred fifty cords of pulpwood in the area that was not burned by the Berniers, and that the fair market value of this as pulpwood in the area was approximately $1,500.

"The Court finds upon all the evidence that the present action being maintained by Bernier Brothers, Inc. is an action for conversion, and that, further, they are in effect claiming conversion not only from the fact that the pulpwood was burned but also that the two Birons, against whom they have brought suit individually, failed to pile the wood on the abutter's property.

"The Court finds that Bernier Brothers, Inc. had a license from Iva Eastman to have pulp piled on her property, but rules that in effect Bernier Brothers, Inc., in their claim against the two Birons individually is attempting to charge them not with conversion but with violation of contract by Biron & Sons, Inc. The Court finds that there is no evidence from which the Court can rule that Bernier Brothers, Inc. ever made any attempt to remove the pulp cut within a reasonable time in the place where it was cut, and that the burning operation by Biron & Sons, Inc. was a reasonable act by the corporation. This may have been in violation of a contract, if a contract existed between Biron & Sons, Inc. and Bernier Brothers, Inc. to deliver pulpwood to places requested and required by Bernier Bros., Inc. No breach of contract is charged, and on these facts the Court finds that Robert Biron and Ernest Biron are not liable individually to Bernier Brothers, Inc. for conversion of the pulpwood."

The Trial Court properly granted Bernier Brothers request that, by virtue of the contract between Landers and the State, Miss Eastman was the owner of the trees suitable for pulp or fuel and that she was entitled to have them cut and piled at accessible locations on her abutting property. *Kingsley* v. *Holbrook,* 45 N. H. 313, 322. See RSA 382-A:2-107 (1). She acquired thereby a property right therein which she could enforce herself (Williston, Contracts (3d *ed.* Jaeger), *s.* 381) or transfer to others. *Kingsley* v. *Holbrook, supra,* 322, 323. The Trial Court also properly granted another request that, by a written agreement dated January 9, 1963, Miss Eastman sold these trees to Bernier Brothers, Inc., which thereupon acquired all her rights in them. Miss Eastman also agreed that the wood could be piled on her abutting property. *Dyer* v. *Hartshorn,* 73 N. H. 509, 510;

*Kingsley* v. *Holbrook, supra.* The Trial Court also found that Bernier Brothers notified Robert Biron, the operating head of Biron & Sons, Inc. that it intended to enforce these rights and hold Biron & Sons "to the specifications in the contract" that is, that trees suitable for pulp or fuel were to be cut and piled on the property of the abutter and "shall not be burned."

Bernier Brothers thus had sufficient right to possession of these trees to maintain an action of conversion against anyone who exercised dominion or control over them inconsistent with Bernier's rights therein. *Pacific & Atlantic Shippers* v. *Schier,* 109 N. H. 551; *New England Box Co.* v. *Gilbert,* 100 N. H. 257; Prosser Law of Torts, (3d *ed.* 1964), *s.* 15, *p.* 81. This right existed while these trees were located on the Eastman land taken by the State and being cleared by Biron & Sons. *Town* v. *Hazen,* 51 N. H. 596, 599; 18 Am. Jur. 2d, Conversion, *s.* 22. The burning of these trees constituted such an exercise of dominion or control inconsistent with the rights of Bernier Brothers as to amount to a conversion by Biron & Sons, Inc. *Block* v. *Talge,* 221 Ind. 658; 18 Am. Jur. 2d, Conversion, *s.* 49; Restatement (Second), Torts, *s.* 226.

Plaintiff's action, however, is not against the corporation but against Ernest Biron and Robert Biron individually. These defendants cannot be liable for conversion unless they participated in or authorized the burning of these trees. *Pacific & Atlantic Shippers* v. *Schier, supra;* 3 Fletcher, Cyc. Corporations, *ss.* 1137, 1140. Because of the result it reached, the Trial Court made no specific finding of its own on this issue but denied plaintiff's request that "Ernest Biron directed Robert Biron to burn or otherwise dispose of all standing wood on the Eastman property and the latter complied with those directions." Hence, on this transferred record (*Ray* v. *Sanborn,* 99 N. H. 438, 440), Ernest Biron individually could not be found liable for the conversion by the corporation and there must be a verdict for the defendant as to him. *New England Box Co.* v. *Gilbert,* 100 N. H. 257.

However the Trial Court granted plaintiff's request that "Robert Biron was the superintendent on the job of Biron & Sons, Inc." The Trial Court itself found that he was the "operating head of the clearing" and that he was informed by an officer of Bernier Brothers that they would hold Biron & Sons "to the speci-

fications in the contract" relating to their purchase of Iva Eastman's interest in the pulpwood on the lot being cleared. There must be a verdict against Robert Biron individually. The Trial Court, at a hearing on the proposed reserved case, ruled that in that event permission would be granted to reopen the case by either party solely on the question of damages.

The Trial Court's contrary result is based mainly on the following findings and rulings. "[I]n effect Bernier Brothers, Inc., in their claim against the two Birons individually is attempting to charge them not with conversion but with a violation of contract by Biron & Sons, Inc. The Court finds that there is no evidence from which the Court can rule that Bernier Brothers, Inc. ever made any attempt to remove the pulp cut within a reasonable time in the place where it was cut."

Although this jurisdiction does not insist that causes of action be labeled, nor are they judged, by the common law denominations (*Schindler* v. *Trust Co.,* 99 N. H. 284, 286), it must be noted that the count on which this action was tried was called trespass and sought damages because "the defendants wrongfully burned said trees."

The Court granted Bernier Brothers' requests that Miss Eastman was the owner of the specified trees and entitled to have them cut and piled at accessible locations on her abutting property by the contractor clearing the land and that Bernier Brothers had acquired those rights. In view of these findings, the Trial Court's finding and ruling that it could not be found that Bernier Brothers ever made any attempt to remove the pulp from the premises is immaterial. *Town* v. *Hazen,* 51 N. H. 596, 598, 599; *Peirce* v. *Finerty,* 76 N. H. 38, 46; *Amidon* v. *Latham,* 78 N. H. 5, 6. Nor can the defendant, Robert Biron, rely on Biron & Sons, Inc.'s failure to remove the trees to the abutting property in accordance with its contract obligation to justify burning them to clear the land. *Town* v. *Hazen, supra.* See *Morin* v. *Hood,* 96 N. H. 485, 486; Restatement (Second), Torts, *ss.* 234, 237. This is especially true in this case where the defendant knew of plaintiff's rights therein and of the obligation of Biron & Sons to remove the trees. See 89 C.J.S., Trover & Conversion, *ss.* 7-10, *pp.* 536-538.

Although the reserved case states that Biron & Sons, Inc.'s cross-action was dismissed, its counsel states in its brief "this

is not the recollection of either attorney." We are bound by the reserved case unless amended by proper proceedings. See *Silver v. First National Bank,* 108 N. H. 390, 393; 4 Am. Jur. 2d, Appeal and Error, *ss.* 476, 478.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.