Belknap
No. 6463

SAM GOGLIA

v.

JEANNE RAND & a.
COEXECUTRICES OF THE ESTATE OF THOMAS HIXON

April 30, 1974

*Normandin, Cheney & O'Neil* and *David O. Huot (Mr. Huot* orally) for the plaintiff.

*Nighswander, Lord, Martin & KillKelley, Willard G. Martin* and *Michael C. Murphy (Mr. Murphy* orally) for the defendants.

DUNCAN, J.   These actions in assumpsit were brought by Sam Goglia, against his lessor, Thomas Hixon, for damages arising out of alleged breach of two commercial leases. Hixon filed three counts in counterclaim: one in debt for unpaid rent, and two others that were subsequently waived. Hixon died before trial, and his coexecutrices were substituted as defendants. Trial by the court resulted in a general verdict for the plaintiff in the sum of $1700. There were no requests for findings or rulings in writing, and none were made. All questions of law raised by the defendants' exceptions were reserved and transferred by *Johnson, J.*

On May 25, 1968, after several weeks of negotiations, Goglia and Hixon executed two leases each dated May 11, 1968, with amendments dated May 25, of commercial properties owned by Hixon in Laconia. One lease was of a drive-in restaurant on Weirs Boulevard at Lakeside Avenue. The other was of property known as the Edgewater Beach restaurant and Edgewater Beach cottages, also on Weirs Boulevard. Both leases were for the 1968 operating season ending September 15, 1968. Goglia took immediate possession.

The amended Weirs Beach drive-in restaurant lease provided for a rental of $1800 payable $500 at the time of signing, $700 by June 30, and the balance of $600 by July 15. The amended Edgewater lease provided for installments payable on the same days of $1000, $1000 and $2000. Of the $1000 due on signing, only $800 was paid. According to uncontradicted testimony by the plaintiff, the $200 balance was withheld pending repair and cleanup work by Hixon which had not been completed.

The plaintiff testified that about May 28, when the promised cleanup of the Weirs drive-in had not taken place, he employed several persons to do so. He sought to recover this expense. This restaurant was not ready for operation until about June 11, 1968.

Hixon did have some repairs made to the Edgewater property, which was opened for business by June 16 or 18. Shortly thereafter the hot water system supplying the cottages failed, and was not repaired for approximately six weeks. At about the same time the cottages' septic system failed, backing up into several of the cottages and creating an unpleasant odor. Also at this time the refrigeration equipment serving the Edgewater restaurant broke down. The plaintiff sought to recover for cottage rentals lost and restaurant food lost through spoilage, both resulting from these breakdowns. Although the hot water and refrigeration systems were eventually repaired on Hixon's orders, the failure of the septic system was never remedied.

Finally, by letter dated July 22, Goglia notified Hixon that because of breach of conditions of the lease he would vacate the Edgewater property on July 30. On July 23 Hixon served Goglia with demands dated July 20, for rent due under both

leases. Goglia responded by letter claiming damages in excess of the rents due, and offering to place the rent for the Weirs drive-in restaurant in escrow, "pending the outcome" of his claim under the Edgewater lease. On July 30, Goglia vacated the Edgewater premises and moved a quantity of food from the Edgewater restaurant to the Weirs drive-in restaurant. Returning to the Weirs restaurant to refrigerate the food the following morning, he found the door padlocked. When Hixon unlocked the door several days later, much of the food had spoiled. Goglia claimed damages for the food, and for the loss of linen returned by the laundry to the Edgewater property after he vacated.

At the trial Goglia testified to Hixon's promise to clean up and repair the properties to ready them for use. The defendants objected and excepted to the admission of this testimony as a violation of the parol evidence rule, since the alleged promises were not contained in the written leases.

In our opinion the evidence was properly received. While the parol evidence rule serves to bar extrinsic evidence tending to alter or contradict the terms of a written agreement recording the integrated understanding of the parties (*Stacy v. Company*, 83 N.H. 281, 187, 141 A. 467, 470 (1928)), the rule is subject to recognized exceptions. *Claveau v. Plantier*, 102 N.H. 487, 161 A.2d 166 (1960). A commonly recognized exception is when, as in the present case, the parol evidence serves to aid in interpretation, or to clarify an ambiguity rather than to contradict unambiguous terms of a written agreement. *Rivier College v. St. Paul Fire Ins. Co.*, 104 N.H. 398, 187 A.2d 799 (1963); 3 A. Corbin, Contracts § 579 (1960); Restatement of Contracts § 230 (1932); Restatement (Second) of Contracts § 240 (Tent. Drafts Nos. 1-7, 1973).

The Edgewater lease provided that the lessee "accepts the premises 'as is'", and that the lessor should be responsible for "all major and/or structural repairs". It also required the lessee to "maintain the premises in the same condition as they are now in" and return them at the end of the term "thoroughly clean and in the same condition, as they are now in." Similar provision appeared in the Weirs drive-in restaurant lease. Yet it is clear from uncontradicted testimony that the premises were far from "clean" at the beginning

of the term. Thus it would be impossible for the lessee to return the premises both "thoroughly clean and in the same condition" as they were in when the leases were executed. The testimony that the parties agreed that the premises would be cleaned before the lessee took possession served to explain an ambiguity and to illuminate the intention of the parties.

The testimony was also admissible as evidence of a collateral agreement made to induce the plaintiff to enter into the integrated writings. *Claveau v. Plantier,* 102 N.H. 487, 161 A.2d 166 (1960). "The only reasonable or permissible conclusion from the facts is that the parties intended to make a binding parol contract collateral to the lease." *Webber v. Loranger,* 79 N.H. 3, 5, 103 A. 1050 (1918); *accord, Stimac v. Wissman,* 342 Mich. 20, 69 N.W.2d 151 (1955); *Charles v. B. & B. Theatres, Inc.,* 234 S.C. 15, 106 S.E.2d 455 (1959); 3 A. Corbin, Contracts § 584 (1960); Restatement of Contracts § 240 (1) (b) (1932); Restatement (Second) of Contracts § 242 (Tent. Drafts Nos. 1-7, 1973).

While the transcript of the hearing discloses no exceptions raising the issue of the sufficiency of the evidence to support the verdict the reserved case indicates that it was presented by motion by the defendant. *See Bernier Bros. v. Biron,* 109 N.H. 555, 561, 258 A.2d 339, 343 (1969). A review of the record shows that there was evidence to warrant findings that the cost of labor and materials resulting from the breach of the oral promise to put the premises in a clean condition was $502.60; that the July 31 lockout of the Weir's drive-in by Hixon resulted in food losses of $951.32; that the value of the linen withheld from the plaintiff was $195.90; a total amount of $1649.82.

It was also findable that delays in repairs of the Edgewater hot water and refrigeration systems and the failure to restore the cabin septic system constituted a breach of the lessor's covenant to make "major" repairs, and destroyed the commercial value of the lease. Contrary to the defendants' contention that Hixon was not notified of the septic system failure, there was evidence from which the court could find that Goglia discussed the failure of the system with Hixon when Goglia withheld rental payments due in July, and that Hixon then promised to have the "problem" fixed, and did not

press for payment; but that the septic system was never repaired. Under the circumstances, the verdict of $1700 cannot be held unwarranted. *See Perry v. Champlain Oil Co.,* 101 N.H. 97, 134 A.2d 65 (1957).

*Judgement on the verdict.*

All concurred.