Belknap
No. 83-335

OMER A. OUELLETTE, JR., AND
CONSTANCE C. OUELLETTE

v.

BRADFORD F. BUTLER AND
LOIS K. BUTLER

July 3, 1984

*Decker, Fitzgerald & Sessler*, of Laconia (*James N. Sessler* on the brief and orally), for the plaintiffs.

*Sulloway, Hollis & Soden*, of Laconia (*John P. Chandler* on the brief and orally), for the defendants.

BROCK, J.   The plaintiffs brought this action to enjoin the defendants' use of their land. We are asked to determine whether an

instrument which on its face gives the defendants a "license" to use the plaintiffs' land may, under the circumstances of this case, be deemed to create an irrevocable interest; *i.e.*, an easement. The Superior Court (*Cann*, J.), approving the recommendation of a Master (*Robert A. Carignan*, Esq.), ruled that the instrument in question, viewed in the light of the drafter's knowledge, was clearly intended to convey an irrevocable interest and could be deemed to do so, notwithstanding its denomination as a license. We affirm.

The defendants, Mr. and Mrs. Butler, in 1961 purchased a parcel of land in Laconia from its owner, Rachel Gilbert. On the parcel was a house which had just been built by Mrs. Gilbert's husband, Eugene. At Mr. Butler's request, Mr. Gilbert also constructed a paved two-car parking area, or driveway, adjacent to the public right-of-way near the east side of the house, and connected this area to the house with a short paved walkway, all of this construction being completed prior to the closing of the sale.

At the closing, Mr. Butler, who was not represented by counsel, learned for the first time that the eastern boundary of the lot he was buying was only two feet from the wall (and the principal entrance) of the house, and that consequently the parking area and most of the walkway were not on his land. They were, in fact, on land owned by the estate of Eugene Gilbert's deceased brother Wilfred. The trustee of that estate, F. A. Normandin, also served as Eugene and Rachel Gilbert's attorney, and represented them at the closing.

F. A. Normandin died in 1967. At trial, Mr. Butler testified that Normandin told him at the closing that he would give the Butlers a legal document giving them the right to use the parking area and walkway, and Eugene Gilbert testified that Mr. Butler would not have purchased the property otherwise.

Normandin drafted and signed a document headed "SUPPLEMENTARY AGREEMENT," which reads in pertinent part: "The said F. A. Normandin, Trustee, hereby gives a license to the said Bradford F. Butler and Lois K. Butler to travel on foot and by vehicle, from said [public right-of-way], over the private land of Wilfred Gilbert Estate to the land of the aforementioned Lot #4 [the Butler lot]." This document was witnessed, acknowledged, and sealed, but was never recorded in the Registry of Deeds.

The land on which the parking area is located was later owned by two of Wilfred Gilbert's children, and was purchased by the plaintiffs in 1978. The plaintiffs concede that they knew of the defendants' use of the parking area when they bought the land. By that time, the defendants had for several years been making small improvements to the plaintiffs' land adjacent to the parking area—seeding and mowing a lawn, building a low retaining wall, etc.

The plaintiffs then brought this action, seeking to enjoin the defendants from making any use of their land. They argued, first, that the defendants had no semblance of a right to use any of the plaintiffs' land outside the parking area; and second, that the right to use the parking area was a license and was thus revocable at will by the plaintiffs. They further argued that, even if equity might normally prevent a revocation, the defendants' inequitable conduct in using land outside the parking area barred them from raising such a defense.

The master found that, while the interest created by the "Supplementary Agreement" was a license, it

"was clearly and unambiguously intended by the drafter to be an irrevocable as opposed to a revocable license. Normandin was aware of the investment being made by the defendants; aware of the prior misunderstanding as to lot lines when the house was constructed and the peculiar problem created by the construction of the house so near a lot line and the necessity for the license and right to park vehicles and the right to travel over their abutter's property for so long as the structure remained in existence."

The master recommended that the plaintiffs' petition for an injunction be approved only insofar as it applied to the land outside the parking area and walkway. The defendants would thereby be restrained from making any use of the plaintiffs' property other than for parking vehicles and for ingress to and egress from their house, using the area paved in 1961. The trial court entered an order to that effect, and the plaintiffs appealed. The defendants cross-appealed from the issuance of the injunction, arguing among other things that the plaintiffs' construction of a fence, which restricts the defendants' access to the land outside the parking area, constituted a nuisance.

■■■■■ While the interpretation of deeds and analogous instruments is ultimately a matter for this court, *see Robbins v. Lake Ossipee Village, Inc.*, 118 N.H. 534, 536, 389 A.2d 940, 941 (1978), our determination of their terms "is based on the parties' intentions as *properly* found by the trial court." *Id.* (emphasis added). In this case, the master acted properly when he interpreted the language of the instrument "with reference to the surrounding circumstances known to the grantor at the time of the conveyance." *MacKay v. Breault*, 121 N.H. 135, 139, 427 A.2d 1099, 1101 (1981). Extrinsic evidence is admissible when it "serves to aid in interpretation, or to clarify an ambiguity rather than to contradict unambiguous terms

of a written agreement." *Goglia v. Rand,* 114 N.H. 252, 254, 319 A.2d 281, 283 (1974).

■ Here, the instrument was patently ambiguous in that no one could tell precisely how extensive or how restricted a right was conveyed by a "license . . . to travel on foot and by vehicle . . . over the private land of Wilfred Gilbert Estate," without reference to the circumstances surrounding the conveyance. The record supports the master's conclusion, based on Normandin's knowledge of the situation, that the right granted was intended to be irrevocable.

A good deal of the plaintiffs' argument on appeal is based on the master's express finding that the right conveyed by the "Supplementary Agreement" was not an easement but a license, which is defined as "a revocable personal privilege to perform an act on another individual's property." *Waterville Estates Assoc. v. Town of Campton,* 122 N.H. 506, 509, 446 A.2d 1167, 1169 (1982). This argument is not persuasive because it focuses exclusively on how a right is labeled, without reference to the reasons behind the label.

■ The cases cited by the plaintiffs in their argument for revocability all emphasize the danger in finding that an irrevocable interest in land could be conveyed *orally,* or by a writing which failed to comply with the statutory requirements for such a conveyance; this would permit circumvention of the Statute of Frauds. *See, e.g., Blaisdell v. Railroad,* 51 N.H. 483, 485 (1871); *Houston v. Laffee,* 46 N.H. 505, 507–08 (1866). Here there is no such danger. The document in question meets all the requirements for the grant of an easement, *see* RSA ch. 477, except that it was not recorded, *see* RSA 477:7. The failure to record could have no effect as to these plaintiffs, however, because their knowledge of the defendants' use gave them constructive notice of the defendants' interest in the property, *Sawin v. Carr,* 114 N.H. 462, 464, 323 A.2d 924, 926 (1974), and this notice "is equivalent to a record," *Moore v. Kidder,* 55 N.H. 488, 492 (1875).

The language used by the Supreme Court of Michigan over a century ago is directly applicable here:

> "Where something beyond a mere temporary use of the land is promised; where the promise apparently is not founded on personal confidence, but has reference to the ownership and occupancy of other lands, and is made to facilitate the use of those lands in a particular manner and for an indefinite period, and where the right to revoke at any time would be inconsistent with the evident purpose of the permission; wherever, in short, the purpose has

been to give an interest in the land, there may be a license but there will also be something more than a license, if the proper formalities for the conveyance of the proposed interest have been observed."

*Morrill v. Mackman*, 24 Mich. 279, 283 (1872); *see also* 28 C.J.S. *Easements* § 2 (1941) ("If the instrument or agreement in terms grants an interest in or right to use the land, even though it is called a license therein, it will, according to the purpose and terms of the agreement, constitute an easement, and not a license.").

We recently held that rights which "did not fall within the strict definition of easements," *Waterville Estates Assoc. v. Town of Campton*, 122 N.H. at 509, 446 A.2d at 1169, could nevertheless be treated as such for tax abatement purposes, if the circumstances of their creation indicated an intent to create more than a mere license. *Id.* at 508–09, 446 A.2d at 1168–69. And in the instant case, the master, notwithstanding his refusal to term the defendants' right an easement, granted their request for a finding that the right to use the parking area was "more like an easement than a license."

Normandin's use of the word "license" is not dispositive where other evidence shows that his purpose as drafter, and grantor, was to convey something more. His actions here were clearly intended to help persuade the defendants to make a major purchase of real estate, and this is inconsistent with an intent to create a revocable interest. *See Morrill v. Mackman supra.* Accordingly, we hold that the defendants' right was in the nature of an unrecorded easement, good against these plaintiffs by virtue of their knowledge of the defendants' use.

The defendants' arguments in their cross-appeal regarding the land outside the parking area, and the fence built thereon by the plaintiffs, are without merit. The evidence did not compel the master to find that the fence was built solely or primarily to annoy the defendants. *See Hunt v. Coggin*, 66 N.H. 140, 20 A. 250 (1890). The order of the trial court is affirmed in all respects.

*Affirmed.*

All concurred.