Belknap
No. 86-139

HUGH M. DALZELL & a.

v.

ROBERT F. HARLOW & a.

December 30, 1986

*Nighswander, Martin & Mitchell P.A.*, of Laconia (*Peter J. Minkow* on the brief and orally), for the plaintiffs Hugh M. Dalzell, Howard G. Dalzell, Kathleen F. Dalzell, Edward Funkhouser, and Nancy F. Funkhouser.

*Decker, Fitzgerald & Sessler P.A.*, of Laconia (*Paul T. Fitzgerald* on the brief), by brief for the plaintiffs Arnold Robbins, Howard A. Layer, and Jane M. Layer.

*Carolyn W. Baldwin* and *Robert K. Mekeel*, of Concord (*Ms. Baldwin* and *Mr. Mekeel* on the brief, and *Mr. Mekeel* orally), for the defendants.

MEMORANDUM OPINION

Acting on a petition and a cross-petition for injunctive relief and for declarations construing terms creating easements or other interests, the Superior Court (*O'Neil,* J.) excluded parol evidence offered by the defendants and entered an order in the plaintiffs' favor. We reverse.

The record provides evidentiary support for the following allegations. A property development known as Tall Pines Harbor, located on Lake Winnipesaukee's Meredith Neck, comprises five condominium units and eight individually owned back lots without shore frontage. The back lots were conveyed subject to the terms of a declaration affecting the condominium units. *See* RSA 356-B:16. The declaration reserved to the back lot owners rights, *inter alia,* "to use the beach area . . . and dock," subject to obligations to contribute to maintenance costs as set by a "beach committee" of back lot and

condominium owners. The declaration itself referred to an earlier condominium declaration, which provided that each condominium unit would carry with it the right to moor one boat, owned by the unit owner or lessee, "on the 'Wooden Dock' area."

The plaintiffs own back lots, and the defendants own the condominium units. The plaintiffs claim that their rights to use the dock include the right to use it for mooring boats, just as condominium owners and lessees are able to do; the defendants disagree, asserting that the back lot owners are entitled to use the dock only in connection with bathing, and for the collection and discharge of boating passengers. After the plaintiffs and other back lot owners began to moor boats at the dock, the defendants purported to amend the condominium declaration so as to eliminate the beach committee and forbid the back lot owners from using the dock for mooring.

The principal issues in this ensuing litigation are the extent of the permissible activities included in the right of a back lot owner to "use the . . . dock," and the asserted power of the condominium owners to alter the scope of those activities. In addressing the first issue, the trial court excluded the defendants' parol evidence on the ground that the phrase "use the . . . dock" was unambiguous and included the right to moor a boat. The court stated that it had "absolutely no doubt, none, as to what that language means. It is absolutely clear and unequivocal." "[T]hose words mean that the plaintiffs have the right, absolute right, to dock or moor their boats at the wooden dock." This conclusion followed from the view that the court had expressed earlier, "that a dock is 'a body of water that surrounds a pier,' and the word 'dock' goes to the vessel which is docked in the water on a pier."

We agree with the defendants that the court erred in finding "use the . . . dock" to be free of ambiguity. The phrase itself is "patently ambiguous in that no one [can tell from the language alone] precisely how extensive or how restricted a right," *Ouellette v. Butler*, 125 N.H. 184, 188, 480 A.2d 76, 79 (1984), was intended by a reference simply to the use of an object with several possible uses. Other terms of the condominium declaration dealing with use of the dock underscore the ambiguity and point to the uncertain nature of the back lot owners' interests. We have already called attention, for example, to the provision that lease or ownership of condominium units carries the right to moor one boat at the dock, whereas none of the instruments articulated a comparable mooring right for back lot owners. Given the debatable extent of the plaintiffs' rights, the defendants should have been allowed to introduce evidence beyond the four corners of the relevant instruments that would bear on the meaning of the phrase in question. *Id.* at 187–88, 480 A.2d at 79.

In reversing for this error we do not intimate any opinion on the court's conclusion about the efficacy of the unit owners' actions to modify the lot owners' rights. Suffice it to say that we believe the parties should begin on remand with a wholly clean slate.

*Reversed.*