Carole A. LAMIRANDE

v.

**RESOLUTION TRUST CORPORATION,** as Receiver for Homebank, FSB; Charles Reese, individually and in his capacity as employee, agent, and officer of HomeBank, FSB, a subsidiary of Numerica Financial Corp.; Ralph Jensen, individually and in his capacity as employee, agent, and officer of Home-Bank, FSB, a subsidiary of Numerica Financial Corp.

Civ. No. 93–363–SD.

United States District Court,
D. New Hampshire.

Oct. 7, 1993.

Kathleen C. Peahl, Manchester, NH, for plaintiff.

Richard V. Wiebusch, Manchester, NH, for Jensen.

Andru H. Volinsky, Concord, NH, for Reese.

Steve Hengen, Concord, NH, for Resolution Trust.

### ORDER

DEVINE, Senior District Judge.

Plaintiff Carole A. Lamirande brings this action against defendants Resolution Trust Corporation (RTC) as receiver for Home-Bank, FSB; Charles Reese, individually and in his capacity as employee, agent, and officer of HomeBank and its parent corporation, Numerica Financial Corporation; and Ralph Jensen, individually and in his capacity as employee, agent, and officer of HomeBank and Numerica, as a result of her termination from employment with HomeBank on November 14, 1990. Plaintiff alleges, inter alia, claims for sex discrimination under Title VII of the Civil Rights Act of 1964, P.L. 88–352 (codified at 42 U.S.C. § 2000e, *et seq.*) (Count I);[1] breach of contract (Count II); wrongful discharge (Count III); breach of the covenant of good faith and fair dealing (Count IV); and negligent and/or intentional infliction of emotional distress (Count V).

The court has jurisdiction (1) over plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 1331 (Supp. 1993) and 1343(a)(4) (Supp.1993); (2) over plaintiff's Equal Pay Act claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1343(a)(4); and (3) over plaintiff's New Hampshire law claims pursuant to 28 U.S.C. § 1367 (Supp.1993).

Now before the court is the motion of Ralph Jensen to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., filed on August 19, 1993.

### Defendant Jensen's Motion to Dismiss

#### 1. Discussion

##### a. Standard of Review

"In ruling on a motion to dismiss, ... [a] complaint is to be construed in the light most favorable to the plaintiff; dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'" *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

##### b. The Amended Complaint

After defendant Jensen filed the instant motion, plaintiff amended her complaint to add the following paragraphs:

33. Shortly after her termination, plaintiff requested and was granted a meeting with defendant Ralph Jensen. At that meeting, plaintiff explained that she believed her termination was unfair and unlawful. She explained that she had greater experience and seniority than the two male employees who had been retained and that she believed she was entitled to equal treatment and an equal opportunity to move down to the position of branch manager.

34. Defendant Jensen indicated that he would not reverse the decision and, in fact, took no remedial action to correct the discrimination which plaintiff had suffered.

##### c. The Title VII Claims

In Count I, plaintiff alleges, inter alia, (1) that her termination "was based upon her sex, in violation of Title VII of the Civil Rights Act of 1964," Amended Complaint at ¶ 38, and (2) that she "received a salary which was less than that received by males in equivalent or lower positions than that held by the plaintiff in violation of Title VII," *id.* at ¶ 39. Defendant Jensen contends that plaintiff's claims under Title VII should be dismissed because "[p]laintiff does not allege any personal involvement by Mr. Jensen in the alleged activities that purport to make up this claim." Defendant Jensen's Memo at 8.

■ Under Title VII,

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, con-

---

1. The court notes that in Count I plaintiff also seeks relief under "[New Hampshire Revised Statutes Annotated (RSA) ] 354–A:7, I, Complaint at ¶ 38; "the Equal Pay Act, 29 U.S.C. § 206(d)," *id.* at ¶ 39; and "[RSA] 275:37," *id.* Jensen's motion does not address these claims.

ditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ...

42 U.S.C. § 2000e–2(a)(1). Further, under 42 U.S.C. § 2000e(b), "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person ...*." (Emphasis added.)

The First Circuit has not yet defined "agent" as it appears in section 2000e(b); however, there is general agreement among the circuits which have addressed the issue that an "agent" of an "employer" is subject to individual liability under Title VII. *See, e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557–58 (11th Cir.1987); *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989) (citing *Sparks v. Pilot Freight Carriers, supra, aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990) (en banc)); *Hamilton v. Rodgers,* 791 F.2d 439, 442–43 (5th Cir.1986) (citing *Jones v. Metropolitan Denver Sewage Disposal Dist.,* 537 F.Supp. 966, 970 (D.Colo. 1982) (citing *Bradley v. Rockland County Community Mental Health Center,* 25 F.E.P.C. 225, 24 E.P.D. ¶ 31,321, 1980 WL 250 (S.D.N.Y.1980))); *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 186 (6th Cir.1992) (citing *Paroline, supra*), *cert. denied,* —— U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) (citing *Paroline, supra*); *contra Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993) (citing *Padway v. Palches,* 665 F.2d 965, 968 (9th Cir.1982)).

In *Miller,* the Ninth Circuit stated,

The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b), and the ADEA limits liability to employers with twenty or more employees, 29 U.S.C. § 630(b), in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Miller v. Maxwell's Int'l, supra,* 991 F.2d at 587. The Ninth Circuit cited no authority for its conclusion that section 2000e(b) was intended to protect "small entities" rather than small businesses. This court respectfully notes that it is "conceivable," and much more likely, that the size restriction contained in section 2000e(b) was intended to protect small family-run businesses from discriminatory hiring claims based on their preference for hiring friends and relatives. *See Armbruster v. Quinn,* 711 F.2d 1332, 1337 n. 4 (6th Cir.1983) (citing Remarks of Senator Fannin, 118 Cong.Rec. 2409–10 (1972), and Remarks of Senator Ervin, 118 Cong.Rec. 3171 (1972), in Subcommittee on Labor–Senate Committee on Labor and Public Welfare Legislative History of the Equal Employment Opportunity Act of 1972[2] (Comm.Print 1972)).

Further,

The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction. The impact of this construction is the broad interpretation given to the employer and employee provisions.

*Armbruster, supra,* 711 F.2d at 1336 (citations omitted).

If there was any doubt as to the Congressional intention that the original language of Title VII be construed and applied broadly, it was dissipated by the unequivocal intention expressed in the passing of the 1972 amendments to that title.

---

**2.** Section 2(2) of the Equal Employment Opportunity Act of 1972, P.L. 92–261, amended section 701(b) of the Civil Rights of 1964 (codified at 42 U.S.C. § 2000e(b)), by substituting "fifteen or more employees" for "twenty-five or more employees."

House Report No. 92–238 (92nd Cong., 2d Sess., 1972; reprinted in U.S.Code Cong. & Admin.News 2141, 2143–44 (1972) noted the following:

> The time has come to bring an end to job discrimination once and for all, and to insure every citizen the opportunity for the decent self-respect that accompanies a job commensurate with one's abilities. The hopeful prospects that Title VII offered millions of Americans in 1964 must be revived.
>
> . . . .
>
> During the preparation and presentation of Title VII of the Civil Rights Act of 1964, employment discrimination tended to be viewed as a series of isolated and distinguishable events, due, for the most part, to ill-will on the part of some identifiable individual or organization.
>
> . . . .
>
> Employment discrimination, as we know today, is a far more complex and pervasive phenomenon. Experts familiar with the subject generally describe the problem in terms of 'systems' and 'effects' rather than simply intentional wrongs. The literature on the subject is replete with discussions of the mechanics of seniority and lines of progression, perpetuation of the present effects of earlier discriminatory practices through various institutional devices, and testing and validation requirements.
>
> . . . .
>
> It is increasingly obvious that the entire area of employment discrimination is one whose resolution requires not only expert assistance, but also the technical perception that a problem exists in the first place, and that the system complained of is unlawful.

*Motorola, Inc. v. McLain,* 484 F.2d 1339, 1344 (7th Cir.1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974), *quoted in Taylor v. Western & Southern Life Ins.,* 966 F.2d 1188, 1195 (7th Cir.1992).

In light of the foregoing, the court gives effect to the plain language of sections 2000e(b) and 2000e–2(a)(1), which clearly impose individual liability upon *"any agent of"* an "employer". *See* § 2000e(b) (emphasis added).

■ "[I]n determining whether a supervisor was acting as an 'agent' for Title VII purposes, courts must look for guidance to common law agency principles." *Sparks, supra,* 830 F.2d at 1558 (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986)). Without attempting to prescribe a precise definition of the term, the court notes that it is clear that an individual is an "agent" under section 2000e(b) if he or she "'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment,'" *Paroline, supra,* 879 F.2d at 104, *quoted in Sauers, supra,* 1 F.3d at 1125; *Kauffman, supra,* 970 F.2d at 185; *see also Sparks, supra,* 830 F.2d at 1559 (holding that a supervisor is an agent under Title VII where, based on actual authority delegated by an employer, he or she makes, or threatens to make, decisions affecting employment status of subordinates); *Hamilton, supra* ("'[a] person is an agent under § 2000e(b) if he participated in the decision-making process that forms the basis of the discrimination'" (quoting *Jones, supra,* 537 F.Supp. at 970)). *See* Restatement (Second) of Agency § 1 (1958).[3]

Accordingly, the court finds that in paragraphs 33 and 34 of her amended complaint, quoted *supra* at page 527, plaintiff has alleged facts sufficient to render defendant Jensen her "employer" under section 2000e(b). Therefore, Jensen's Rule 12(b)(6) motion must be denied as to Count I.

### d. The Contract Claims

■ In Count II, plaintiff alleges claims for breach of a purported employment contract with HomeBank, while in Count IV, she alleges a claim for breach of the *contractual* duty of good faith and fair dealing, *see, e.g.,*

**3.** § 1. *Agency; Principal; Agent*
   (1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

   (2) The one for whom action is to be taken is the principal.
   (3) The one who is to act is the agent.

*Centronics Corp. v. Genicom Corp.,* 132 N.H. 133, 139, 562 A.2d 187, 190 (1989) (referring to the New Hampshire common law duty of good faith and fair dealing as a contractual obligation).

In New Hampshire, "[h]owever broad the rule may be for charging an agent individually upon a contract ostensibly made on behalf of a principal, it has never been applied in a case where the principal was liable." *Strout Farm Agency v. Worthen,* 81 N.H. 95, 97, 122 A. 327, 328 (1923). Accordingly, and because plaintiff's claims in Counts II and IV are premised on an alleged employment contract between plaintiff and HomeBank, the court finds that plaintiff is precluded from maintaining said claims against Jensen in his capacity as agent for HomeBank. Therefore, the court herewith grants Jensen's motion as to Counts II and IV to the extent said counts pertain to him.

### e. *Counts III and V*

Jensen contends that plaintiff's tort claims in Counts III and V must be dismissed because "[a]n officer, director, or agent of a corporation, who takes no part in the commission of a tort cannot be held personally liable to third persons for such a tort." Jensen's Memo in Support of Motion to Dismiss at 4 (citing *Bernier Bros. v. Biron,* 109 N.H. 555, 559, 258 A.2d 339 (1969)). In light of plaintiff's amended complaint, in which she alleges Jensen's participation in her termination, quoted *supra* at page 527, said contention is inapposite. Accordingly, the court denies the instant motion as to Counts III and V.

### *Conclusion*

For the reasons stated herein the court (1) grants defendant Jensen's motion to dismiss (document 11) as to plaintiff's contract claims against said defendant (Counts II and IV), and (2) denies said motion as to all other counts.

SO ORDERED.