Ceasar **GAITERS**, Jr.,
Plaintiff-Appellant,

v.

Loretta **LYNN**, Defendant-Appellee.

No. 87-3013.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1987.

Decided Oct. 13, 1987.

---

Sa'ad El-Amin, Richmond, Va., for plaintiff-appellant.

J. Alvernon Smith, Jr., Samuel Baronian, Jr. (Smith, Baronian, Blank, Isaacs & Hinton, Richmond, Va., on brief), for defendant-appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Ceasar Gaiters, Jr. appeals a judgment of the United States District Court for the Eastern District of Virginia dismissing on the merits his diversity claim against appellee Loretta Lynn for intentional infliction of emotional distress. The claim arose out of allegedly racially disparaging comments Lynn addressed publicly to Gaiters during her performance in the Richmond Coliseum, where Gaiters served as a security guard. We agree with the district court that as a matter of law Lynn's conduct, as pleaded, was not actionable under state tort law, and we therefore affirm the dismissal. We decline, however, to treat this appeal as frivolous and we therefore deny appellee's motion under Fed.R.App.P. 38 for sanctions.

I

On November 28, 1982, Loretta Lynn, a performer of country and western music, gave a concert at the Richmond, Virginia Coliseum along with her band, The Coal Miners. The name of the band has its origin in Lynn's upbringing as a daughter of a coal miner; a movie about her life, as well as the title song from that movie, is called "Coal Miner's Daughter." Appellant Gaiters served as a crowd controller at the concert, and his security assignment required him to remain in one spot, at the foot of the stage, throughout the performance. At one point during the performance, Lynn spotted Gaiters, a black man, asked him to stand, and said, "If you people don't know what coal looks like, here is somebody who knows what coal is all about," or words to that effect. She added, "Black is beautiful, ain't it honey." These comments drew a laugh from the audience. A spotlight focused on Gaiters while Lynn directed her comments to him. As required by his assignment, Gaiters remained at his security post during this incident.

Gaiters later brought this diversity action against Lynn, claiming that her conduct constituted the tort of intentional infliction of emotional distress, or "outrage," under Virginia law. His complaint alleged that following the concert, he became the object of jokes and was called "coal miner's daughter" by his peers. According to his allegations, embarrassment from the incident and the attending derision by his peers led him to drink heavily and also caused him to experience sexual impotence. He claimed that Lynn's conduct was extreme and outrageous and that it caused him severe emotional injury for which he sought damages.

On Lynn's motion to dismiss under Fed. R.Civ.P. 12(b)(6), the district court, while recognizing that Lynn's comments might have been insensitive and in bad taste, concluded that her behavior as alleged was not so "outrageous and intolerable when judged against generally accepted standards of decency or morality in the State of Virginia" as to be actionable under state law. On that basis the district court granted Lynn's motion to dismiss for failure of the complaint to state a claim.

This appeal followed.

## II

Virginia law recognizes the tort of intentional infliction of emotional distress and requires for it proof of (1) intentional or reckless conduct (2) that is outrageous and intolerable, offending generally accepted standards of decency, (3) and that causes (4) severe emotional distress to plaintiff. *See Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va.1974). Whether conduct is sufficiently outrageous is, in the first instance, a question of law for the court. *Lewis v. First National Bank of Stuart*, 645 F.Supp. 1499, 1506 (W.D. Va.1986). The Restatement of Torts, which we believe accurately expresses Virginia's interpretation and application of this tort, offers guidance for the assessment of what conduct is sufficiently outrageous to satisfy this second essential element of the tort.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community....
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened ... to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to inter-

vene in every case where some one's feelings are hurt.

*Restatement (Second) of Torts* § 46 comment *d*.

Whether particular conduct arguably involving racial slurs and innuendo meets this stringent test of outrageousness has presented particularly difficult and sensitive questions for courts. Racial allusions do not fall *per se* on either side of the line. As with other admittedly hurtful conduct, racial allusions may be found not actionable as at worst "mere insult," or actionable as "intolerably atrocious conduct," depending upon the context. *Compare, e.g., Contreras v. Crown Zellerbach*, 88 Wash.2d 735, 565 P.2d 1173, 1177 (1977) (specific racial epithets not, as a matter of law, "mere insult"), *with, e.g., Bradshaw v. Swagerty*, 1 Kan.App.2d 511, 563 P.2d 511 (1977) ("nigger," "bastard," "knot-headed boy" mere insult; not actionable); *see also Pawelek v. Paramount Studios Corp.*, 571 F.Supp. 1082, 1085–86 (N.D.Ill.1983) (considering "outrageousness" of Polish jokes in a movie). No clear guiding principle emerges from these cases; the question is inescapably one of legal judgment based upon total context.

We have no specific guidance from decisions of Virginia state courts applying the state tort to conduct specifically involving racial allusions. The most directly apposite decision applying state law is apparently *Brown v. Loudoun Golf and Country Club, Inc.*, 573 F.Supp. 399 (E.D.Va.1983), in which the district court considered a pendent state claim that a black man had been denied access to a private golf course because of his race. The decision merely held, however, in denying the defendants' motion for summary judgment, that the conduct alleged could not be declared as a matter of law not to be actionable under the state tort. It therefore provides little guidance beyond its narrow holding that conduct motivated by racial prejudice might be actionable.

We are therefore left essentially to our own independent legal judgment in freely reviewing the district court's dispositive legal determination that Lynn's conduct, as

**54**

pleaded, and as construed most favorably to Gaiters, did not rise to the level of outrageousness required to create tort liability.

Exercising that judgment, we agree with the district court. In explanation, we identify the principal factors that for us tip the scales in the direction of, at most, "mere insult," and away from "outrage" giving rise to tort liability in the particular conduct here alleged.

First, in context, the remarks, while calling attention to Gaiters' race, particularly his blackness, are not manifestly disparaging or demeaning of either race or color. The words spoken contained none of the shameful, explicit racial epithets that sadly still afflict some segments of our society and whose well understood, traditional, unmistakable purpose has been to disparage, to demean, to humiliate and to hurt. Neither did the words in context convey the suggestions of incompetence or inferiority sometimes evident in sly innuendo or specific references to race or color. Indeed, the words are as susceptible on their face to suggestions of friendly identification of speaker with subject in their common backgrounds of hard work and humble origins, as to any attempt to disparage or demean. And we simply cannot say that the phrase "black is beautiful," though celebratory on its face, was converted by its context here to the sort of mean-spirited humiliation that might be considered an atrocious affront to accepted standards of decency.

In short, we conclude, as a matter of law, that Lynn's alleged conduct, while possibly carelessly insensitive to its potential for hurt, involved no more than, at most, the kind of "inconsiderate and unkind" act that the tort of "outrage" does not encompass and that falls instead among those intended or unintended hurts that persons in our still "rough-edged" society must simply abide without judicial remedy. *See Restatement (Second) of Torts* § 46 comment *d.*

Of course by this we do not intimate that words or conduct more clearly or explicitly humiliating or disparaging on the basis of race or color might not be actionable under Virginia law as an intentional infliction of emotional distress. We simply hold that as a matter of state tort law, the conduct here does not meet the stringent requirement of outrageousness central to that tort.

Suggesting that this appeal is frivolous, Lynn has moved that we award her damages and double costs as a sanction under Fed.R.App.P. 38. We deny the motion.

AFFIRMED.