Elizabeth M. PAROLINE,
Plaintiff–Appellant,

v.

UNISYS CORPORATION; Edgar L. Moore, Defendants–Appellees.

No. 88–1319.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1989.

Decided June 26, 1989.

Rehearing In Banc Granted Aug. 18, 1989.

Bruce Allan Fredrickson, (Susan L. Brackshaw, Webster & Fredrickson, Victor M. Glasberg, on brief) for plaintiff-appellant.

Thomas R. Bagby (Ronald M. Green, Epstein, Becker & Green, P.C., Donald G. Kaas, Unisys Corp., on brief) for defendants-appellees.

Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.

MURNAGHAN, Circuit Judge:

We must decide whether the district court erred in granting summary judgment in favor of the Unisys Corporation and Edgar L. Moore on various federal and state law claims arising out of the alleged sexual harassment of Elizabeth M. Paroline, the appellant. Paroline asserted claims of sexual harassment and constructive discharge against Unisys and Moore under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She claims that Moore, a Unisys employee, made improper sexual advances toward her both on and off the job. Paroline also brought pendent state law claims against both defendants for intentional infliction of emotional distress, a claim against Moore for assault and battery, and a claim against Unisys for negligent failure to warn and reckless endangerment.

The district court granted summary judgment in favor of the defendants on all claims except the one for assault and battery. The parties agreed to a voluntary dismissal of that claim and it is not at issue here. As for the Title VII claims, the district court ruled that Unisys and Moore could not be held liable for sexual harassment or constructive discharge because Unisys took prompt remedial action after Paroline's complaint, and because Paroline quit before giving Unisys' remedy a chance to work. On the two remaining state law claims, the court first ruled that the exclusive remedies of the Virginia Workers' Compensation Act barred Paroline's action for negligent failure to warn and reckless endangerment. The court also held that Paroline could not proceed on her intentional infliction of emotional distress action because she could pursue a full remedy for her injury through her assault and battery claim against Moore. Paroline appealed.

We conclude that the district court erred in granting summary judgment against Paroline on the sexual harassment and constructive discharge claims under Title VII and on the Virginia state law claim for negligent failure to warn and reckless endangerment. However, we affirm the grant of summary judgment on the claims for intentional infliction of emotional distress, but for reasons different than those expressed by the district court.

## I.

## BACKGROUND

Not surprisingly, the parties present different versions of the events that prompted Paroline's lawsuit. However, because this is an appeal from a grant of summary judgment, we will present Paroline's version of the facts wherever the parties' evidence conflicts, at least to the degree that her allegations have support in affidavits,

depositions or other documentary evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (on motion for summary judgment, evidence of nonmovant is to be believed, and all justifiable inferences must be drawn in her favor).

Management at Unisys had received complaints well before Paroline started work there that Moore had made sexually suggestive remarks to and had engaged in unwelcome touching of female clerical workers. Such complaints were brought to the attention of Jo Anne Scott, who supervised the clerical and word processing staff, and of Charles Peterson, who had overall responsibility for the Unisys office in Rosslyn, Virginia, where Paroline worked. Other men in the office also allegedly engaged in improper sexual comments and touching of female employees.

Peterson convened a staff meeting to warn the men not to engage in conduct that could be construed as sexual harassment. He also met privately with Moore to caution him against sexual harassment of female employees.

However, Paroline's evidence casts doubts on the effectiveness and sincerity of the warnings. Other former female employees contend that Moore continued his sexual innuendo and improper touching of women workers (other than Paroline) after the warning from Peterson. Furthermore, there was evidence that after Peterson's warning, a number of men, including Peterson himself, began joking about the women's complaints of sexual harassment.

Paroline entered the scene in the fall of 1986, when she applied for a job as a word processor at Unisys. Moore participated in her job interview. During the interview, Moore asked Paroline what she would do if subjected to sexual harassment in the workplace. Although Peterson, who also interviewed Paroline, found the question inappropriate, he never criticized or reprimanded Moore for asking it. Moore recommended Paroline for the job, and Unisys hired her.

Shortly after Paroline started work in November 1986, Moore directed his atten-tion toward her. He made sexually suggestive remarks to Paroline that she considered offensive. Sometime in December of 1986, Moore approached Paroline as she was working and started rubbing his hands on her back, and continued even though she indicated that he should stop.

The event that sparked the lawsuit, however, did not occur until January 22, 1987, when a severe snowstorm hit Northern Virginia. The Unisys office closed early because of the bad weather, and Paroline had no way home. She accepted a ride with Moore. During the trip, he made remarks which she interpreted as sexually suggestive. He also kissed her and repeatedly tried to hold her hand during the ride. When they reached Paroline's apartment, Moore insisted on coming in despite her objections. After several minutes in the apartment, Moore grabbed Paroline and began kissing her and rubbing his hands up and down her back, despite her demands that he stop. At first, he refused to remove his hands from her body. She eventually persuaded him to leave.

The next day, Paroline informed Peterson of the incident. According to Paroline's deposition testimony, Peterson indicated his awareness of previous complaints of sexual harassment in the office, and promised that it would not happen again.

Unisys launched a formal investigation of Moore's conduct. Afterwards, the company disciplined Moore. Unisys management warned him in writing that "[i]f there are any recurrences or if any form of retaliation occurs ... such will be grounds for immediate termination of your employment with Unisys." Furthermore, Unisys officials instructed Moore to seek counseling and to limit contact with female employees to official company business. Unisys also terminated his access to the company's Sensitive Compartmented Intelligence Facility ("SCIF").

Unisys notified Paroline on January 29, 1987 about the actions taken against Moore. She considered them inadequate. Paroline had since learned of Moore's alleged sexual harassment of other female workers at Unisys and the failure of the

company's previous warnings to deter Moore from striking again. Paroline also feared that banning Moore from the SCIF area would actually increase her contact with him because she had not yet obtained a security clearance to enter the SCIF, and thus would be forced to remain in the same part of the office where Moore would be working. There is no evidence that Moore made any inappropriate remarks or sexual overtures toward Paroline after she complained to Peterson.

Knowing she was upset, company officials offered Paroline two weeks off. Although Unisys officials asked her not to quit, she submitted her resignation on February 15, 1987. Paroline later filed suit against Moore and Unisys.

## II.

### MOORE'S STATUS AS "EMPLOYER" UNDER TITLE VII

■ Paroline may pursue her sexual harassment and constructive discharge claims against Moore only if he was her "employer" within the meaning of Title VII. An "employer" includes "a person engaged in an industry affecting commerce who has fifteen or more employees ..., *and any agent of such a person....*" 42 U.S.C. § 2000e(b) (emphasis added). Unisys clearly falls within the statutory definition of "employer." However, the parties disagree as to whether Moore exercised sufficient supervisory authority over Paroline to qualify as an agent of Unisys within the meaning of § 2000e(b).

An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. *See York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982) (dictum); *Tafoya v. Adams,* 612 F.Supp. 1097, 1104 (D.Colo.1985), *aff'd,* 816 F.2d 555 (10th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *Duva v. Bridgeport Textron,* 632 F.Supp. 880, 882 (E.D.Pa.1985). *See also, Hamilton v. Rodgers,* 791 F.2d 439, 442 (5th Cir.1986).

The supervisory employee need not have ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions. *Tafoya,* 612 F.Supp. at 1105. Furthermore, an employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor. As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes.

Paroline has raised a genuine issue of material fact as to whether Moore exercised sufficient supervisory authority over her to qualify as an employer under Title VII. Unisys claims that Moore exercised no supervisory authority over Paroline and "had no authority regarding her hiring, performance reviews, promotions or decisions related to discipline or termination." However, much of the evidence suggests otherwise. Moore not only participated in Paroline's interview but also recommended that Unisys hire her. Furthermore, there was evidence that Moore personally gave Paroline work assignments on at least one occasion, even though the company had formally designated Jo Anne Scott as Paroline's immediate supervisor. The power to determine work assignments often represents a key element of supervisory authority. *See Hamilton,* 791 F.2d at 442–43 (defendants, who had authority over car assignments and staffing of shifts, were employers under Title VII). Such evidence precludes summary judgment on the issue of whether Moore was Paroline's employer under Title VII.

## III.

### SEXUAL HARASSMENT

Paroline claims that Moore engaged in sexual harassment that created a hostile work environment in violation of Title VII. The Supreme Court has recognized that sexual harassment that creates a hostile or abusive atmosphere in the workplace may give rise to a claim of sex discrimination

under Title VII. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). To prove a hostile work environment claim under Title VII, the plaintiff must show (1) that the conduct in question was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer. *Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987). Unisys argues that Paroline has failed to produce evidence that the harassment was sufficiently severe or pervasive. Unisys also argues that no basis exists for holding the company liable for Moore's conduct. We disagree with both arguments.

A. *Severity or Pervasiveness of Harassment*

Whether Moore's harassment was sufficiently severe or pervasive is quintessentially a question of fact. Summary judgment was inappropriate unless, accepting Paroline's evidence as true and drawing all justifiable inferences in her favor, a fact finder could not reasonably conclude that Moore's conduct was so severe or pervasive as to create an abusive work environment. *See Anderson*, 477 U.S. at 250–52, 255, 106 S.Ct. at 2511–12, 2513, (standard for summary judgment). We conclude that summary judgment was inappropriate here because "reasonable minds could differ" as to whether Moore's behavior created a hostile atmosphere. *See id.* at 250, 106 S.Ct. at 2511.

To determine whether the harassment was sufficiently severe or pervasive, the fact finder must examine the evidence both from an objective perspective and from the point of view of the victim. *See Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 620 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). We decline to focus solely on the plaintiff's subjective reaction, because "[a]n employee may not be unreasonably sensitive to his [or her] working environment." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986), *quoting Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981). To succeed on a hostile environment claim, the plaintiff must first demonstrate that the harassment interfered with her ability to perform her work or significantly affected her psychological well-being. *See Rabidue*, 805 F.2d at 620. If the plaintiff satisfies that burden, the fact finder must then decide whether the harassment would interfere with the work performance or significantly affect the psychological well-being of a reasonable person in the plaintiff's position.

With those standards in mind, we examine the evidence to determine whether Paroline's claim should survive summary judgment. Paroline has raised a genuine issue as to whether Moore's conduct interfered with her work performance or significantly affected her psychological well-being. Paroline testified in a deposition that she feared coming to work because of Moore's behavior. She also testified that Moore's conduct had adversely affected her ability to concentrate on her work. Others testified in deposition that Paroline appeared upset, even visibly shaken, by Moore's conduct. Furthermore, Paroline asserted in answers to interrogatories that her psychologist was prepared to testify at trial that she had suffered "depressive neurosis" as a result of Moore's actions. Accepting such evidence as true and drawing all justifiable inferences in Paroline's favor, a fact finder could reasonably conclude that Moore's behavior significantly affected Paroline's psychological well-being and adversely affected her work performance.

Paroline has also raised a genuine issue as to whether Moore's unwelcome touching and sexual innuendo would significantly affect the psychological well-being or the job performance of a reasonable person in like circumstances. Moore's alleged transgressions were far from trivial. Paroline alleged that Moore's unwanted sexual touchings and innuendo escalated into an assault and battery the day of the snowstorm. A reasonable person could find such behavior not merely offensive,

but traumatic as well. Furthermore, a reasonable person could especially fear Moore upon discovering, as Paroline did, that Moore allegedly had pursued a campaign of harassment against other women in the office, and had failed to heed warnings from Unisys management to cease such behavior. A person in Paroline's position could reasonably fear that Moore's behavior during the snowstorm, in the face of Unisys' orders that he desist, represented yet another stage in an ever-intensifying ordeal of sexual harassment. Moore's sexual overtures might reasonably produce strong reactions of fear and intimidation because Moore held a superior position to Paroline's in the company and perhaps even exercised supervisory authority over her. *See* Section II, *supra.* Certainly, a victim of harassment might experience less stress and fear if the sexual advances had come from a person who held an equal or lower rank in the company.

A fact finder could reasonably conclude that Moore's behavior created a hostile and abusive working environment from the perspectives of both the reasonable person and Paroline herself. We, therefore, cannot say as a matter of law that the alleged harassment was insufficiently severe or pervasive to support a sex discrimination claim under Title VII.

### B. *Imputing Liability to Moore and Unisys*

If the fact finder concludes that Moore exercised sufficient supervisory authority over Paroline to qualify as an "employer" under Title VII, *see* Section II, *supra,* Moore may be held liable for any actionable sexual harassment in which he personally participated. *See Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557–58 (11th Cir.1987) (employer directly liable for its own sexual harassment of employees). However, whether to impute liability to Unisys is a more complicated matter. In a hostile environment claim such as we have here, an employer is liable for one employee's sexual harassment of another worker if the employer had "actual or constructive knowledge of the existence of a sexually hostile working environment and took no

prompt *and adequate* remedial action." *Swentek,* 830 F.2d at 558, *quoting Katz v. Dole,* 709 F.2d 251, 255 (4th Cir.1983) (emphasis added).

Paroline advances two theories by which to impute liability to Unisys for Moore's conduct. First, she contends that Unisys failed to take adequate remedial action after she complained about Moore. Furthermore, she argues that Moore's prior conduct toward other female employees should have alerted Unisys to the likelihood that he would, despite warnings, also try to harass Paroline. Such notice, Paroline argues, imposed a duty on Unisys to take adequate steps to try to prevent her harassment, not merely to act after the event. Both theories represent valid means of imputing Title VII liability to an employer in sexual harassment cases involving a hostile work environment. Paroline has produced evidence sufficient to survive summary judgment under either theory of imputed liability.

■ Neither party disputes that Paroline's complaint to Unisys officials about Moore's behavior represented sufficient notice to the company. However, Unisys argues that it cannot be held liable for Moore's actions because the company took prompt and adequate remedial steps once Paroline complained and after the deed was done to try to deter Moore from further harassment.

The adequacy of Unisys' remedy is a question of fact which a court may not dispose of at the summary judgment stage if reasonable minds could differ as to whether the remedial action was "reasonably calculated to end the harassment." *Katz,* 709 F.2d at 256. Although Unisys warned Moore that a recurrence of the harassment would result in his firing and took punitive measures such as delaying his planned promotion and salary increase, Paroline's evidence, if true, would cast doubt on the adequacy of those remedies. Paroline's work arrangement still exposed her to contact with Moore. Although the company ostensibly revoked Moore's SCIF access as punishment for his actions, Paro-

line produced evidence that the clearance revocation actually increased her chance of encountering Moore in the office. Furthermore, Paroline produced evidence that previous reprimands of Moore for alleged sexual harassment of other female employees had failed to deter him from striking again.

Indeed, a reasonable finder of fact could infer that Unisys intended Moore's earlier reprimand as nothing more than a slap on the wrist or perhaps even an outright sham. Paroline produced evidence that Peterson, the head of Unisys' Rosslyn office, openly joked about female workers' sexual harassment complaints after ostensibly warning Moore and other male employees not to engage in harassment of women. The fact finder could reasonably infer that Peterson's joking sent a message to Moore and other male employees that Unisys did not intend to take serious action to stop sexual harassment. In that light, a fact finder might also justifiably conclude that Unisys' reprimand of Moore following Paroline's complaint would have had no greater deterrent effect than the company's earlier warnings to him about sexual harassment.

We, of course, express no views on the merits. The fact finder might choose not to believe Paroline's evidence or might refuse to draw the inferences she advocates. We conclude only that summary judgment was inappropriate because a fact finder could reasonably conclude that Unisys' remedy was inadequate under the circumstances.

■ Paroline also argues that Unisys not only had a duty to remedy the sexual harassment after it occurred, but also had an obligation to try to prevent her harassment from occurring in the first place. Prevention is generally more efficacious than cure. In previous sexual harassment cases involving hostile workplace environments, we have focused on the adequacy of an employer's remedies *after* the harassment had occurred. *See Swentek*, 830 F.2d at 558; *Katz*, 709 F.2d at 254, 256. However, the logic of *Swentek* and *Katz* also allows us to impute liability, under certain circumstances, to an employer who failed to take steps to try to *prevent* sexual harassment of the plaintiff.

In a hostile environment case under Title VII, we will impute liability to an employer who anticipated or reasonably should have anticipated that the plaintiff would become a victim of sexual harassment in the workplace and yet failed to take action reasonably calculated to *prevent* such harassment. An employer's knowledge that a male worker has previously harassed female employees other than the plaintiff will often prove highly relevant in deciding whether the employer should have anticipated that the plaintiff too would become a victim of the male employee's harassing conduct. *See Yates v. Avco*, 819 F.2d 630, 636 (6th Cir.1987) ("[A]lthough Avco took remedial action once the plaintiffs registered complaints, its duty to remedy the problem, or at a minimum, inquire, was created earlier when the initial allegations of harassment [against other female employees] were reported."); *id.* at 639 (Nelson, J., concurring); *Ross v. Double Diamond, Inc.*, 672 F.Supp. 261, 273 (N.D.Tex. 1987) (company's knowledge of male employee's earlier harassment of a female worker weighed heavily in decision to hold employer liable for same employee's later harassment of other women). Of course, an employer's knowledge of previous incidents of sexual harassment of other female workers will not necessarily indicate that an employer should have anticipated the plaintiff's harassment as well. But that is generally an issue for the fact finder, not one for disposal on summary judgment. For example, if it were clear that the male employee had previously targeted only women under a certain age or in a certain job classification, it might be unreasonable to expect an employer to anticipate the harassment of a plaintiff who falls outside those categories.

■ Paroline has raised a genuine issue as to whether Unisys should have anticipated her harassment by Moore. Unisys had received complaints that Moore had made improper sexual overtures toward female workers, and according to Paroline's evidence, the complaints of sexual harassment

continued even after Unisys had warned Moore and other male employees to refrain from such behavior. Moreover, at least one Unisys official knew that Moore had asked Paroline in her job interview how she would respond if subjected to sexual harassment at work. One could interpret that question as an effort to gauge Paroline's willingness to tolerate sexual harassment. After the interview, Moore recommended that Unisys hire Paroline. The fact finder could reasonably infer from the evidence that Unisys should have recognized Moore's question as a warning signal that he planned to target Paroline for sexual harassment.

■ Assuming that Unisys should have anticipated the harassment of Paroline, we must next decide whether Paroline has raised a genuine issue as to whether the company took action reasonably calculated to prevent that harassment. As we have noted, Paroline's evidence could support an inference that Unisys' prior warning to Moore and other male employees about sexual harassment was nothing but a sham. Furthermore, Peterson never criticized or reprimanded Moore for asking Paroline in her job interview how she would respond to sexual harassment, even though he realized the question was inappropriate. Viewing the evidence most favorably to Paroline, the fact finder could reasonably conclude that Unisys should have anticipated Paroline's harassment, but took inadequate steps to try to prevent it. Therefore, the district court erred in granting summary judgment on Paroline's sexual harassment claims against Moore and Unisys.

## IV.

### CONSTRUCTIVE DISCHARGE

■ Paroline also asserts claims for constructive discharge under Title VII. Constructive discharge occurs only when an employer deliberately makes the work conditions intolerable in an effort to induce the employee to quit. *Bristow*, 770 F.2d at 1255.

Intolerability of the plaintiff's working conditions must be "assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255. If Paroline's evidence is true, a reasonable person could have found the Unisys work environment intolerable. The sexual overtures and the attack to which Paroline was allegedly subjected could traumatize a reasonable person in Paroline's position. A reasonable person might especially fear Moore if she knew, as Paroline's evidence suggests, that Moore had a history of sexual harassment of women and had persisted in such behavior despite warnings and reprimands from his superiors. Paroline has produced evidence that Unisys management was well aware of the persisting problem created by Moore. Specifically, she claims, and Unisys has not denied, that upon hearing of Moore's alleged harassment of Paroline, Peterson responded, "Oh no, not again." Moore's superior position in the company in comparison with Paroline could increase the reasonable person's sense of vulnerability. Paroline's increased risk of encountering Moore in the office, which resulted from Unisys' revocation of his SCIF clearance, could intensify the stress and distraction of the work environment. The fact finder who believed Paroline's evidence and drew all justifiable inferences in her favor could plausibly conclude that a reasonable person would have found the work environment so intolerable that he or she would have felt compelled to resign. Summary judgment, therefore, was inappropriate, though again we emphasize that we have, and intend to express, no opinion on the merits.

■ We also believe a reasonable fact finder could conclude that Unisys and Moore intended to force Paroline to quit. Although the plaintiff must prove that her employer had specific intent to force her to quit, such "[i]ntent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Id. Accord, Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). There is

evidence that Unisys management officials, as well as Moore, knew that Paroline was highly upset at the prospect of encountering Moore at the office. The evidence also showed that Unisys' remedial action increased the risk of contact between Moore and Paroline, precisely at a time when Paroline wanted to avoid Moore altogether. Our dissenting brother unsuccessfully attempts to minimize the import of such evidence by noting that Paroline herself recommended that Moore lose his security clearance. Paroline did not, however, request that Unisys accomplish revocation of Moore's SCIF clearance in such a way as to increase her day-to-day contact with her alleged harasser. Paroline lacked a SCIF clearance at the time Unisys revoked Moore's and did not know how long she might wait before obtaining one. Her increased daily contact with Moore thus would have continued indefinitely.[1] The evidence suggests that Unisys could have delayed revoking Moore's clearance until after Paroline received permission to enter the SCIF. By such delay Unisys could have punished Moore as Paroline suggested, therefore, ironically ameliorating the punishment, without increasing the risk of encounters between the two in the office. Unisys' choice of a different option at least allows an inference that the company intended to increase Paroline's contact with Moore and thus exacerbate her fear and sense of vulnerability in the workplace.

We do not deny that a fact finder might reasonably conclude, as does Judge Wilkinson, that Unisys acted with noble intentions in response to Paroline's complaints of harassment. We are not triers of fact, however, and do not have the authority to usurp the fact finder's function of deciding which of two permissible inferences about Unisys' intent to draw from the evidence. To allow summary judgment at this point would make a mockery of the Supreme Court's admonition that "[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts" are functions exclusively for the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

Questions of intent are quintessentially ones for the fact finder under most circumstances, and we see no reason to depart from that principle here. The evidence, if believed by the fact finder, could support an inference that Unisys not merely "fail[ed] to act in the face of known intolerable conditions," *Bristow*, 770 F.2d at 1255, but specifically tried to make life at the office less pleasant for Paroline. If, in fact, Unisys' "remedy" was merely a ploy to force Paroline to quit, the fact finder could also reasonably infer that Moore, by acquiescing in Unisys' action, also intended to provoke Paroline's resignation.

Unisys argues that Paroline has failed to show, as a matter of law, that the company intended to cause her resignation. Unisys emphasizes that it asked Paroline not to quit. Although such evidence may provide a powerful defense for Unisys at trial on the constructive discharge claim, it does not compel or justify summary judgment in Unisys' favor. Even if Unisys officials did ask Paroline not to resign, a reasonable fact finder could conclude, based on Paroline's evidence, that the company was not sincere and actually wanted her to quit.

---

1. Our dissenting colleague implies that Unisys would have solved the problem with the security clearances during the two-week leave it granted to Paroline following her alleged harassment. That assumption simply has no support in the evidence. The deposition testimony of Charles Peterson, Unisys' own witness, demonstrates that Unisys never anticipated that Paroline would gain immediate access to SCIF upon her return to work after the leave. In fact, the company could not predict when she would receive the clearance, as evidenced by the following deposition testimony from Peterson:

Q Well, until her clearances came through were you planning to keep her on an emergency leave status so that she wouldn't be in the office?

A [Peterson]: I had—it was my hope that that amount of time would not be required. *No, that was not my intention....*

Q You had no control, I assume, over when her clearances would come through?

A No, unfortunately.

Q It's not done by [Unisys]?

A No, it's done by the government, Defense Investigative Service.

Q So you're at their mercy basically?

A Oh, boy, are we.

(Emphasis added).

We refuse to adopt a rule that would allow clever or sophisticated employers automatically to avoid Title VII liability merely by asking harassment victims not to resign. It is conceivable that some employers, in an effort to insulate themselves from liability, might ask discrimination victims not to quit and yet simultaneously strive to make those employees' workplace environment intolerable. We refuse to adopt a legal rule that encourages such duplicity. The issue of Unisys' intent is a factual, not a legal, question on the record here.

With due respect to Judge Wilkinson, we believe he mischaracterizes the implications of our opinion for employers' proper handling of sexual harassment complaints. He claims that employers who receive complaints of harassment will henceforth feel compelled to fire the accused first and ask questions later. Our opinion neither requires nor condones such a cavalier disregard for the rights of accused employees in sexual harassment cases. Nothing in our opinion suggests that an employer may avoid liability only by firing the accused harasser. Nor do we mean to suggest that a constructive discharge claim will automatically survive summary judgment unless the employer has terminated the alleged harasser. The plaintiff must produce some evidence that the employer intended to force her to quit. Mere failure to fire the accused does not necessarily constitute the evidence of intent required to avoid summary judgment. But where, as here, the employer not merely declines to fire the accused but also unnecessarily takes action (by eliminating Moore's SCIF clearance before one has been secured for Paroline) which forces the plaintiff to increase contact with her alleged attacker, whose anticipated presence causes dread and fear, a fact finder could reasonably infer intent to provoke the plaintiff's resignation.

2. Paroline raises two additional arguments that are either meritless or premature. First, she argues that the district court premised its decision on an erroneous belief that a plaintiff may recover under Title VII only if she demonstrates a tangible or economic injury. We see nothing in the record to suggest that the district court operated under that assumption. Second, Paro-

In sum, Paroline has raised genuine issues of material fact crucial to resolution of her constructive discharge claims. We reverse the grant of summary judgment because a reasonable fact finder could resolve the disputed factual issues in Paroline's favor.[2]

## V.

## NEGLIGENT FAILURE TO WARN AND RECKLESS ENDANGERMENT

### A. *Effect of the Virginia Workers' Compensation Act*

The district court erred in holding that the Virginia Workers' Compensation Act ("Act"), Va.Code § 65.1–1, *et seq.*, bars Paroline's claim for negligent failure to warn and reckless endangerment. The Act provides the exclusive remedy for injuries "arising out of and in the course of the employment." Va.Code §§ 65.1–7, 65.1–40. Paroline argues that the injury forming the basis of her state law claim (Moore's alleged sexual advances during the trip to her apartment and his alleged assault and battery of her inside her home) did not occur "in the course of" her employment and thus did not fall within the scope of the Workers' Compensation Act. We agree.

Unisys asserts that the Act precludes Paroline's claim because her alleged injury and Unisys' purported duty to warn or protect originated in the workplace. Unisys fails to appreciate the distinction between an injury "arising out of" employment and one occurring "in the course of" that employment:

> The words "arising out of", as used in the Act, refer to the origin or cause of the injury while the phrase "in the course of" pertains to the time, place and circumstances under which the accident occurred.

line argues that Unisys' alleged failure to pay her for two weeks of administrative leave represents an economic injury for which she can recover under Title VII. We need not reach that issue. That argument is properly addressed to the district court if Paroline succeeds in proving a Title VII violation at trial.

*Grand Union Co. v. Bynum,* 226 Va. 140, 143, 307 S.E.2d 456, 458 (1983), *quoting Baggett Transp. Co. v. Dillon,* 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978). The Workers' Compensation Act applies only if both conditions are satisfied. *Id.*

Paroline's assertion that the company's failure to warn caused her injury, as well as the fact that Moore met Paroline at work, might be grounds for holding that the injury arose out of her employment. We need not decide that issue. However, Paroline's alleged injury at the hands of Moore clearly did not occur "in the course of" her employment. As the Virginia Supreme Court explained in *Grand Union,*

> [a]n accident occurs during the course of the employment if it takes place within the period of the employment, at a place where the employee may reasonably be expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.

226 Va. at 143, 307 S.E.2d at 458, *quoting Baggett,* 219 Va. at 637, 248 S.E.2d at 822. Paroline was not fulfilling the duties of her employment or performing tasks incidental to her job responsibilities when Moore allegedly attacked her in her apartment and during the homeward bound trip in his automobile. With very limited exceptions, not applicable here, "injuries sustained off the employer's premises while going to or from work are not within the 'course of employment' and are therefore not compensable under the Act." *Grand Union,* 226 Va. at 144 n. *, 307 S.E.2d at 458 n. * (citations omitted).

Unisys's reliance on *Graybeal v. Board of Supervisors,* 216 Va. 77, 216 S.E.2d 52 (1975), is misplaced. There, the Virginia Supreme Court held that a prosecutor's injury from a bomb explosion occurred in the course of employment even though it

happened at his home after he returned from work at the courthouse. A former convict had planted the bomb in retaliation for the prosecutor's success in obtaining the criminal's conviction and imprisonment. The Virginia Supreme Court has emphasized that *Graybeal* was premised on the "atypical circumstances of a public officer's employment." *Grand Union,* 226 Va. at 144, 307 S.E.2d at 458. A prosecutor's duties, as *Grand Union* pointed out, are "performed at no fixed time or location." *Id.* He is "charged with the duty of exercising his authority in different places, including his home, and at various times, including evening hours." *Graybeal,* 216 Va. at 79, 216 S.E.2d at 54. In other words, prosecutors and certain other public officials are on duty 24–hours a day, at least for purposes of injuries that relate to their official duties. The rule in *Graybeal* does not extend to the typical worker, such as Paroline, who has "fixed hours and places of employment." *Grand Union,* 226 Va. at 144 n. *, 307 S.E.2d at 458 n. *.

In sum, Paroline was not performing work for her employer when Moore allegedly attacked her. Paroline was away from the office at the time. Therefore, the alleged attack on Paroline did not occur "in the course of" her employment, and her injury did not fall within the scope of the Virginia Workers' Compensation Act.[3] The district court erred in granting summary judgment on that ground.

**B. *Does Paroline Have a Cause of Action Under Virginia Law?***

Unisys, however, as an alternative ground for upholding the district court's judgment, argues that Virginia recognizes no cause of action based upon an employer's failure to inform an employee about a co-worker's proclivities for certain types of

---

**3.** At first glance, our holding that Paroline's injury did not occur in the course of her employment might appear to preclude holding Unisys liable under Title VII for Moore's alleged sexual harassment. *See* Section III. B., *supra.* However, a closer examination reveals no inconsistency between our holding on the state law action and our decision on Paroline's sexual harassment claims under Title VII. The claim

for negligent failure to warn and reckless endangerment focuses on Moore's alleged attack of Paroline the day of the snowstorm. By contrast, her Title VII claims focus not on the attack *per se,* but rather on the hostile environment in the workplace supposedly created when Paroline was forced to work in close proximity to the man who allegedly attacked her.

offensive or dangerous behavior. We have found no Virginia case law clearly resolving the issue. The Virginia Supreme Court's recent decision in *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 372 S.E.2d 391 (1988), suggests that the issue remains unresolved in Virginia. In *Victory Tabernacle,* the court was asked to decide whether the plaintiff had stated a cause of action against a church which had failed to warn her that its employee had been convicted of aggravated sexual assault on a young girl prior to his hiring. The employee met the plaintiff's 10–year–old daughter at the church and later raped her there. *Victory Tabernacle,* 372 S.E.2d at 392. The Virginia Supreme Court refused to address the issue of the duty to warn because counsel had cited no authority for the argument. *Id.* at 393.

Although *Victory Tabernacle* left unresolved the question whether an employer has a duty to warn others about an employee's dangerousness, the court emphasized that Virginia recognizes a cause of action based on an employer's negligent hiring of a dangerous individual. *See id.* at 393. Since Virginia recognizes the tort of negligent hiring, logic suggests that it would also recognize a cause of action based on an employer's negligent retention of an employee who displays dangerous tendencies after his hiring. Paroline's claim is arguably based on a theory of negligent retention. However, neither party on appeal has addressed the possible application of the tort of negligent retention, and thus we are unable to determine whether the principles discussed in *Victory Tabernacle* would encompass Paroline's claim.

The parties' briefs provide little guidance in deciding whether Paroline has stated a cause of action under Virginia law. We believe the most prudent course is to reverse the grant of summary judgment and remand the case to the district court, where Paroline will have the opportunity to clarify the precise nature of her claim and to attempt to demonstrate that it is a recognized cause of action under Virginia law.

## VI.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The district court apparently erred in holding that Virginia law precludes Paroline from maintaining a cause of action for intentional infliction of emotional distress because her assault and battery claim against Moore could provide an adequate remedy for her injuries. We know of no Virginia statutory or case law that precludes a plaintiff from pursuing both claims simultaneously.

 We agree with Unisys and Moore, however, that the facts alleged by Paroline are insufficient to support a claim for intentional infliction of emotional distress under Virginia law. A plaintiff asserting such a claim cannot prevail unless she shows that the defendant's "conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Womack v. Eldridge,* 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). The Restatement of Torts provides guidance as to the proper interpretation of outrageousness under Virginia law. *Gaiters v. Lynn,* 831 F.2d 51, 53 (4th Cir.1987).

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 comment d. Whether Moore's behavior and Unisys' response, or lack thereof, was sufficiently outrageous and atrocious is, in the first instance, a question of law for the court. *Gaiters,* 831 F.2d at 53 (interpreting Virginia law). Even if we accepted all of Paroline's allegations as true and drew all reasonable inferences in her favor, the alleged harassment to which she was subjected would not rise to the level of out-

rageousness required under the strict standards imposed by Virginia law.

There is nothing inconsistent in allowing Paroline to proceed to trial on her sexual harassment and constructive discharge claims, while holding that the behavior to which she was subjected was insufficiently outrageous as a matter of law to establish a claim for intentional infliction of emotional distress. Behavior may fall short of "outrageousness" for purposes of Virginia's tort law and yet give rise to Title VII liability for sexual harassment or constructive discharge. *See Studstill v. Borg Warner Leasing*, 806 F.2d 1005, 1008 (11th Cir.1986) (although sexual harassment not "sufficiently heinous" to support a claim for intentional infliction of emotional distress under Florida law, it did support a Title VII hostile environment claim).

Of course, sexual harassment may give rise to a claim for intentional infliction of emotional distress under some circumstances. In fact, we held in *Swentek* that the alleged sexual harassment of a female flight attendant could support a claim for intentional infliction of emotional distress under Virginia law. *See* 830 F.2d at 562. However, the harassment alleged in *Swentek* was significantly more severe and pervasive than that alleged by Paroline. *See id.*[4] The alleged harassment in *Swentek* could support a finding of "outrageousness" under Virginia law; Paroline's alleged harassment could not.

## VII.

### CONCLUSION

We uphold the district court's grant of summary judgment in favor of Unisys on Paroline's claims for intentional infliction of emotional distress. However, we reverse the grant of summary judgment on Paroline's Title VII claims against Moore and Unisys for sexual harassment and constructive discharge and her state law claim against Unisys for negligent failure to warn and reckless endangerment. We remand those claims to the district court for further proceedings consistent with this opinion.

We once again emphasize that our partial reversal of the district court judgment should in no way be construed as an indication of how the fact finder should ultimately decide the merits of Paroline's surviving claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WILKINSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Paroline has raised a triable issue of a hostile sexual environment at the company which made working conditions for her a source of considerable apprehension. I thus concur in part III of the majority opinion. I do not think, however, that there is any evidence that Unisys attempted to discharge Paroline, "constructively" or otherwise. I thus dissent from part IV. The issue is of more than theoretical import; a finding of constructive discharge carries an award of back pay.[1]

A constructive discharge is not an actual discharge; like a claim of "constructive

---

4. In *Swentek,* we found the following evidence sufficient to preclude a directed verdict in favor of the defendant:

> Swentek alleged that for several years Ludlam seized every opportunity to upset her with sexually abusive language and conduct. According to Swentek, he made repeated reference to her private parts, sought her out in airports and hotels in order to make obscene comments, fell to his knees in a sexually suggestive way when they first met, dropped his pants in her presence and engaged his friends in sexually molesting behavior.

*Swentek,* 830 F.2d at 562.

1. I would also hold that upon remand, Paroline's claim against Unisys for negligent failure to warn and reckless endangerment must be considered in light of the Virginia Supreme Court's failure to recognize a tort of negligent supervision of employees in *Chesapeake & Potomac Telephone Co. v. Dowdy*, 235 Va. 55, 365 S.E.2d 751 (1988). I do not understand the majority's discussion of *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391 (1988), to foreclose the district court's consideration of the applicability of the *Dowdy* decision as well. With that understanding, I concur in all of the majority opinion with the exception of part IV.

notice" or "constructive possession" it will always have its fictional elements. In this, as in other claims of constructive discharge, no one was actually terminated; instead the employee quit. Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this circuit has insisted that it be carefully cabined.

A plaintiff alleging constructive discharge must thus prove two elements: "deliberateness of the employer's action, and intolerability of the working conditions.... Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *quoting EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 672 (4th Cir.1983), *rev'd on other grounds*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).[2] Although a failure to act in the face of known intolerable conditions may create an inference that the employer was attempting to force the plaintiff to resign, *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir.1984), such an inference depends upon some evidence that the inaction of the employer was directed *at the plaintiff*. The fact that all employees were treated identically rebuts any inference that the treatment of the plaintiff was done "with the intention of forcing him to resign. Certainly ... [the employer] did not wish to force all of its employees to resign." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981).

In this case, there is no evidence that Unisys engaged in any adverse action or inaction directed at the plaintiff Paroline. To the contrary, Unisys took remedial action when presented with Paroline's complaint. The company told Moore that if there were any more such incidents he would be fired. There were, in fact, no more such incidents. A written memoran-

dum, setting forth the conditions of his continued employment, was placed in Moore's personnel file. Moore was required to seek counseling; his planned promotion and salary increase were delayed; and his contact with female employees was limited to official company business. Moreover, Unisys asked Paroline not to quit. The company also gave Paroline two weeks off in which to recuperate. Finally, Unisys offered to pay for counseling for Paroline. How this course of conduct amounts to a constructive discharge of Paroline on the part of Unisys is beyond me. Paroline did not, however, give these remedies the opportunity to work. *See Garner v. Wal–Mart Stores*, 807 F.2d 1536, 1539 (11th Cir.1987).

The majority bases its argument that there was a genuine issue as to Unisys' intent upon one fact: that Unisys' remedial action of withdrawing Moore's access to its Sensitive Compartmented Intelligence Facility actually "increased the risk of contact between Moore and Paroline, precisely at a time when Paroline wanted to avoid Moore altogether." The majority speculates this might conceivably be evidence of a ploy by a "clever or sophisticated" employer from which a factfinder could reasonably infer that Unisys intended to provoke Paroline to resign. The majority, however, overlooks the fact that Paroline herself, in an interview during Unisys' investigation of her complaint, requested that Unisys withdraw Moore's SCIF access. Unisys was in the process of getting Paroline a transfer so that she would be able to work in the section of the building that Moore could not enter. The fact that issuance of a SCIF clearance for Paroline rests with the Department of Defense does nothing to meet the point that Unisys was acting in accordance with Paroline's wishes in the matter.

The majority contends that, while the response of Unisys to Paroline's complaint may well have been satisfactory, the claim

---

**2.** While other courts have adopted an objective test, dependent upon the reasonableness of the employer's action and the reasonableness of the employee's perception of the intolerable conditions, the result under either standard is the same. *Levendos v. Stern Entertainment*, 860

F.2d 1227 (3d Cir.1988); *Calhoun v. Acme Cleveland Corporation*, 798 F.2d 559 (1st Cir.1986); *Derr v. Gulf Oil Corporation*, 796 F.2d 340 (10th Cir.1986); *Lojek v. Thomas*, 716 F.2d 675 (9th Cir.1983).

of constructive discharge in this case must nonetheless be submitted to the fact-finder. If, however, a claim this thin is one for the trier of fact, it is hard to imagine any claim of constructive discharge on which summary judgment would be appropriate. The implications of the majority's holding are most troubling. To protect itself as a matter of law against a claim of constructive discharge an employer may now be prompted to immediately dismiss any employee against whom a complaint of harassment is lodged. Whether this rule comports with any basic sense of personal fairness or due process, the majority neglects to ask. The workplace is to become the world of the accuser, where the slightest hesitancy in discharging the target of an accusation may lead the accuser to quit and later hold the company liable for constructive discharge.

One may take quite seriously the problems of sexual harassment in the workplace without subscribing to part IV of the majority opinion. Title VII suits for sexual harassment implicate several interests. The victim has an interest in not having to run a daily gauntlet of unwelcome pressures and advances at work. The accused also has an interest, however, in not losing a job or reputation on the basis of an accusation which turns out to be mistaken or downright false. The rule of law must reflect some equation of interests in a controversy. With all respect for the majority, it has left companies little incentive to inquire. Under the majority's view, the safe legal course is to act upon accusation, and not risk a claim of constructive discharge by waiting for the facts.

Instead of indicating an intent to force Paroline to leave, the company's actions here reflect the opposite; Unisys actively took action to improve Paroline's conditions of employment. Because there was no evidence presented of any intent to force Paroline to leave, and in fact substantial evidence of an intent to persuade her to stay, I would affirm the district court's grant of summary judgment for Unisys on the claim of constructive discharge.