**Morris W. CRABTREE, Plaintiff,**

v.

**BHK OF AMERICA, Defendant.**

**Civil Action No. 95–0045–D.**

United States District Court,
W.D. Virginia,
Danville Division.

Sept. 17, 1996.

---

Alan T. Gravitt, Elizabeth S. Byrd–Roberts, Gravitt & Gravitt, P.C., Halifax, VA, for plaintiff.

Morris Wilson Crabtree, South Boston, VA, pro se.

Robert Hugh Morrison, William W. Bennett, Jr. & Associates, Halifax, VA, for defendant.

## MEMORANDUM OPINION

KISER, Chief Judge.

Before me is defendant's motion for summary judgment. The parties have briefed the issues and presented oral argument. The motion is therefore ripe for disposition. For the reasons contained herein, I am of the opinion that defendant's motion should be granted.

## FACTUAL BACKGROUND

This is a sexual harassment and retaliatory discharge action under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* Plaintiff, Mr. Crabtree, a male employee of defendant corporation, BHK of America ("BHK"), alleges that BHK wrongfully discharged him from employment and that such action constituted discrimination on the basis of sex in the form of sexual harassment and retaliatory discharge. BHK now moves for summary judgment.

Mr. Crabtree's employment with BHK began on August 8, 1994. He was hired as a machine operator. Crabtree alleges that in November of 1994, Chris Cole, the machine supervisor, told him a joke, to-wit:

Q: Do you have a dicky-do disease?

(No response)

A: You know, does your belly stick out further than your dicky do.

Cole informed Crabtree that a female employee, Tammy Holland, had asked him to relate the joke to Crabtree.

Crabtree acknowledges that this was an isolated event and that during the remainder of his employment he heard no more sexually offensive remarks.

At the time of this incident, BHK had in place a sexual harassment policy which states:

"It is BHK of America's policy to prohibit harassment of one employee by another employee or supervisor on the basis of sex.... While it is not easy to define precisely what harassment is, it certainly includes unwelcome jokes or comments, sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature."

The policy also describes a procedure for employees to voice grievances:

"Any employee who feels that he/she has been subjected to sexual harassment should immediately report the matter to the President or Personnel Manager.... [T]here will be no retaliation for either filing a complaint or participating in an investigation."

The policy is clearly marked in the employee handbook, a copy of which was received by Crabtree, who acknowledged that he read and understood the policy. Crabtree admits that he chose not to follow the policy but instead requested Chris Cole, the machine supervisor and the person who had related the offensive joke to him, to set up a meeting with management. At no time during the two months following the offensive joke and the time of his termination did Crabtree attempt to report the incident to the Personnel Manager or the Plant Manager as provided in the employee manual.

On January 13, 1995, before a meeting had been arranged and approximately two months after hearing the offensive remark, Crabtree became involved in an incident with another employee. Crabtree alleges that before lunch on January 13th he told two other employees that he was going to talk to the Plant Manager, Zdravko Radakovic, that day if Cole had not yet arranged for a meeting. Following lunch on January 13th, David Day, the shift supervisor and brother-in-law of Tammy Holland, issued a written warning to Crabtree for creating a disturbance on the floor. Day alleges that Crabtree was threatening Brian Greene, another employee, with whom Crabtree allegedly has a history of problems. Crabtree alleges that Mr. Day never mentioned why he had issued the warning and claims that he never threatened Mr. Greene.

Upon leaving Day's office, Crabtree claims to have remarked, "Why don't you write your sister-in-law up for sexual harassment." After meeting with Day, Crabtree alleges that his machine was not working properly and that he asked Mr. Greene to repair it. Crabtree claims Greene was angered by the request and became physically hostile.

Crabtree alleges that Mr. Day intervened to separate Crabtree and Greene by stepping between the two men and pushing Crabtree in the chest with his fists.

After the incident, Richard Wimmer, the Production Supervisor, suspended Crabtree, instructing him to return to work on January 17, 1995. Upon returning to work, Mr. Radakovic informed Crabtree of the decision to terminate his employment. Mr. Radakovic's decision was based on an investigation into the January 13, 1995 altercation with Greene in which he interviewed Mr. Day, Mr. Greene, Mr. Cole, and Mr. Talley, all employees who witnessed the event. Radakovic was not aware of Tammy Holland's alleged sexual harassment prior to making his decision.

## I. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. Sex Discrimination Under Title VII

■ Title VII of the Civil Rights Act of 1964 prohibits "... discrimination against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such person's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court, in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) established that pervasive sexual harassment that creates a hostile or abusive environment in the work place may support a claim of sex discrimination under Title VII. To establish a hostile work environment claim, plaintiff must show that: (1) the conduct in question was unwelcome; (2) the conduct constituted harassment that was based on sex; (3) the harassment was sufficiently pervasive or severe to alter the conditions of employment and create an abusive work environment; and (4) some basis exists for imputing liability to the employer. *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989); *see also Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987).

■ Summary judgment is appropriate if, accepting Crabtree's evidence as true and drawing all justifiable inferences in his favor, a fact finder could not reasonably conclude that the alleged harassing conduct was so severe or pervasive as to create an abusive work environment. *Paroline v. Unisys Corp.*, 879 F.2d at 105. The alleged harassment consisted of a single, isolated incident in which a male co-worker related to Mr. Crabtree an off-color joke of a sexual nature. Because Mr. Crabtree has failed to show that this incident interfered in any way with his ability to perform his work, summary judgment must be granted with regard to the sexual harassment claim.

## III. Retaliatory Termination

■ In order to establish a *prima facie* claim for retaliatory discharge, a plaintiff must prove: (1) he engaged in protected activity; (2) that the defendant took adverse employment action against him; and (3) that a causal connection exists between his protected activity and the adverse action. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). If the plaintiff establishes a *prima facie* case, the defendant must then produce a legitimate non-discriminatory reason for the adverse action. *Id.* If the defendant satisfies this burden, the plaintiff then bears the burden of demonstrating that the defendant's reason is pretextual. *Id.*

BHK's motion for summary judgment must be granted with respect to the claim for retaliatory discharge because Crabtree has not established a *prima facie* case. First, Crabtree has not established that he was engaged in a "protected activity." Section 704(a) of Title VII prohibits retaliation against those who oppose discriminatory employment practices (*i.e.* practices made unlawful by Title VII) or participate in Title VII processes (*e.g.* making a charge, testifying, or participating in an investigation or proceeding). Crabtree acknowledges that he never made a complaint through the procedures established by BHK and known to him for filing sexual harassment complaints. Instead he chose to ask a fellow employee to arrange a meeting with management. Crabtree did nothing about his grievance for approximately two months, until the day he was fired, claiming that he was waiting for the meeting with management to be arranged. He now asserts that he was "in the process of attempting" to report sexual harassment. Indeed, attempting to report an incident of sexual harassment would constitute protected activity. However, it does not appear to me that Mr. Crabtree made such an attempt.

Despite knowing the proper procedure for reporting harassment, Crabtree chose to ask the person who made the offending remark to set up a meeting with management. He did nothing more for approximately two months, when he was given a disciplinary warning. Upon receiving this warning by his shift supervisor, David Day, Crabtree offhandedly remarked to Day, "Why don't you write your sister-in-law up for sexual harassment." Crabtree neither said nor did anything more with regard to the alleged sexual harassment. He easily could have walked directly into the Personnel Manager or Plant Manager's office himself and made a complaint yet chose not to do so. Mr. Crabtree's actions and words do not constitute an "attempt" to report harassment.

Second, assuming *arguendo* that Crabtree was engaged in a protected activity, he has not established a causal connection between that activity and his termination. For an employee to establish this causal connection, he must show that "the adverse action would not have occurred 'but for' the protected conduct." *Id.* at 366. Zdravko Radakovic, the Plant Manager, made the decision to terminate Crabtree without knowledge of the alleged sexual harassment. Even if Mr. Day was motivated to recommend firing Crabtree for threatening to report his sister-in-law for sexual harassment, there is no evidence that Radakovic knew of the alleged harassment, and, furthermore, Radakovic based his decision to terminate Crabtree on the results of an investigation in which he interviewed a number of employees who had witnessed the January 13, 1995 incident. Crabtree has failed to establish that he would not have been fired had he not been engaged in "the process of attempting" to report sexual harassment.

Viewing the complaint and all the evidence in the light most favorable to Mr. Crabtree, it is clear that there is no genuine issue of material fact, and BHK is entitled to judgment as a matter of law.