Marian P. BOOTH, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF
ENVIRONMENT, HEALTH & NATU-
RAL RESOURCES; Jonathan B.
Howes, Secretary of N.C. Dept. of Envi-
ronment, Health & Natural Resources;
Brenda Buck Griffin; Sharon Eason;
Pat Cumbo and Juanita Tripp, Defen-
dants.

No. 4:95–CV–52–F3.

United States District Court,
E.D. North Carolina,
Eastern Division.

Sept. 19, 1995.

William J. Little III, Greenville, NC.

Edwin Lee Gavin II, Raleigh, NC.

Jeffrey B. Foster, Greenville, NC.

*ORDER*

JAMES C. FOX, Chief Judge.

This matter is before the court on motions by the defendants to dismiss. Plaintiff has responded to the motions and the matter is ripe for disposition.

On March 31, 1993, plaintiff filed with the North Carolina Office of Administrative Hearings ("OAH") a Charge of racial discrimination by virtue of being subjected to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. In response to the directive on the Charge form [1] to name "the employer, labor organization, employment agency, apprenticeship committee, state or local government agency who discriminated against me (If more than one list below)", plaintiff answered, "Environ. Health & Natural Resoruces—Environ. Mgmt." and "N.C.Dept. of Environment, Health & Natural Resources."

Plaintiff listed as "particulars" of the discrimination (i) that she was harassed on March 19, 1993, concerning a work error; (ii) she has been subjected to a continuous pattern of harassment by management and by the friends of a co-worker who directed racial slurs and derogatory comments to her in June, 1992; Regional Coordinator, Pat Hooper, had complained about a work error on March 19, 1993; (iii) that she believed she had been discriminated against on the basis

of her race—black. In her EEOC Affidavit, attached to the Charge of Discrimination, plaintiff related that she had been employed by the North Carolina Department of Environment, Health, and Natural Resources ("DEHNR") since November 5, 1991, and was one of only three black employees on the Administrative Staff. She described the incident of March 19, 1993, in which she was called in by her immediate supervisor regarding a complaint from Pat Hooper that she had neglected to send a cover letter along with nine reports Hooper had asked her to mail.

Plaintiff explained that the March 19th incident was an example of the harassment by Hooper which had begun in June 1992, when co-worker, Juanita Tripp, allegedly made racist comments about plaintiff. Plaintiff described her strained relationship with Ms. Tripp who, plaintiff contends, feels she is superior to other employees because of her lengthy tenure. Plaintiff also related several other derogatory comments she attributed to other co-workers. She concluded by stating, "I believe that I have been discriminated against because of my race (Black), by being harassed and subjected to a hostile working environment of racial slurs and derogatory comments, in violation of Title VII of the Civil Rights Act of 1964, as amended."

Documents attached to plaintiff's response to the instant motions reveal that Edward T. Smith, Director of the Civil Rights Division of the OAH, assigned the case a FEPA Charge Number, then immediately forwarded a copy of plaintiff's Charge to the Raleigh Area Office of the EEOC, pursuant to the EEOC/OAH worksharing agreement.[2] Director Smith noted on the referral sheet that "this charge is to be initially investigated by the FEPA [N.C.OAH]."

---

**1.** Ms. Booth filed her Charge on an Equal Employment Opportunity Commission ("EEOC") Form 5.

**2.** Section 2000e–5(c) of Title 42, United States Code, requires complainants to resort to "state and local remedies" before proceeding under federal laws. "This requirement is rooted in a 'policy of cooperation' between the federal government and the states ..., and is designed to give state agencies ' "a limited opportunity to

resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of discrimination" ' ". *Davis v. North Carolina Dept. of Correction,* 48 F.3d 134, 137 (4th Cir.1995) (internal citations omitted). As a result, EEOC has developed a system of referral and deferral in which "EEOC delays processing a Title VII claim while the complainant first proceeds under state law in a state forum." *Id.*

On April 5, 1993, a "Notice of Charge of Discrimination in Jurisdictions Where an F.E.P. Agency Will Initially Process," addressed to "Mr. Jonathan B. Howes, Secretary" of the DEHNR in Raleigh, North Carolina, originated from the office of the EEOC Area Director, Richard Walz. The Notice advised that plaintiff's Title VII charge of racial discrimination had been filed with the OAH and "sent to the EEOC for dual filing purposes." The Notice was accompanied by a copy of plaintiff's charge and "S–4," and stated as the circumstances of alleged violation, "Harassment."

The OAH completed its investigation and forwarded the charge file to the Charlotte District office of EEOC on or about August 8, 1994. The record reveals neither the result of the OAH investigation, nor that of the EEOC.

Plaintiff instituted this action by Complaint filed on March 24, 1995, in which she named DEHNR, Howes (as DEHNR Secretary), Griffin, Eason, Cumbo and Tripp as defendants. The Complaint purports to set forth claims pursuant to Title VII for racial discrimination, as well as state law claims for intentional and negligent infliction of emotional distress and violations of public policy. For the alleged violation of her civil rights under Title VII, plaintiff seeks:

> from the Defendant, DEHNR, ... past, present and future loss of salary, fringe benefits, employment opportunities, promotions, retirement, past, present and future mental anguish, pain and suffering, humiliation, emotional distress and loss of enjoyment of life and from the individual Defendants for past, present and future mental anguish, pain and suffering, humiliation, emotional distress and loss of enjoyment of life.

Complaint at ¶ 24. She seeks punitive as well as compensatory damages against the individual defendants in the two emotional distress charges.

## PROCEDURAL PREREQUISITES

The procedural history of Ms. Booth's attempts to obtain redress for what she perceives as her former employer's violation of federal employment civil rights law, reveals just how complicated that law and the accompanying procedure can be—not only for complainants, but for state and federal administrative staff persons, lawyers, and judges as well. The most instructive resource, at present, in tracking the established process for pursuing an employment discrimination claim in North Carolina, is the recent Fourth Circuit Court of Appeals case, *Davis v. North Carolina Dept. of Correction,* 48 F.3d 134 (4th Cir.1995).

■ In *Davis,* the court explains that, if a person wishes to complain about discriminatory employment practices alleged to be violative of state law and federal law, the complainant first must file a Charge with the OAH, which is the state agency established to hear discrimination claims referred from the EEOC. *See* N.C.Gen.Stat. § 7A–759. The OAH will transmit a copy of the Charge to the EEOC pursuant to their worksharing agreement for dual filing purposes. If the complainant mistakenly first files a Charge containing claims covered by state law with the EEOC, that agency will transmit a copy of the Charge to the OAH for preliminary investigation, also pursuant to the worksharing agreement.

■ The OAH has 60 days in which to investigate the Charge and to conduct "proceedings ... under the State or local law," 42 U.S.C. § 2000e–5(c), in order "to give state administrative agencies an opportunity to invoke state rules of law," *Yellow Freight Sys., Inc. v. Donnelly,* 494 U.S. 820, 825, 110 S.Ct. 1566, 1569, 108 L.Ed.2d 834 (1990). After the expiration of the 60–day period, the complainant may file a Title VII claim with the EEOC, "[o]r, if the complainant initially filed the complaint with the EEOC, which then referred it to the state, 'the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint' when state proceedings terminate, or upon 'expiration of the 60–day deferral period, whichever comes first.'" *Davis,* 48 F.3d at 137 (quoting *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980)).

■ Notwithstanding the foregoing,

> [e]ven at this point, however, Title VII still prohibits a claimant from invoking the

jurisdiction of the federal courts. As the Supreme Court has recognized, "action by the EEOC ... is a predicate for litigation based on the federal statute." *Yellow Freight Sys.,* 494 U.S. at 825 [110 S.Ct. at 1569]....

[Section 2000e–5(b) ] provides that a federal discrimination claim brought by a private party cannot be heard by a federal district court until the EEOC has conducted an investigation and determined the validity of the claim. Further, the section requires that the EEOC decide whether the agency will bring the claim in federal court or whether the complainant will be issued a right-to-sue letter, which letter is essential to initiation of a private Title VII suit in federal court. 42 U.S.C. § 2000e–5(b); *id.* § 2000e–5(f)(1); *see also Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 104–05 n. 12 [99 S.Ct. 1601, 1610–11 n. 12, 60 L.Ed.2d 66] ... ("[A] complainant ... must obtain a 'right-to-sue' letter before proceeding in federal court."); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798 [93 S.Ct. 1817, 1822, 36 L.Ed.2d 668] ... (1973); *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

*Davis,* 48 F.3d at 137–38.

## PROCEDURAL HISTORY
## OF THIS CASE

■ The record, as it presently exists, reveals that plaintiff filed her Charge of discrimination by virtue of being subjected to a hostile work environment, with the OAH in the first place, on March 31, 1993. Her Charge contained neither citation to North Carolina statutory prohibitions against employment discrimination, nor allegations of employment discrimination against which state law expressly protects. North Carolina's anti-discrimination statutes do not address allegations of discrimination in the conditions of employment, per se, but only discrimination in the context of specific discriminatory acts.

Any State employee or former State employee who has reason to believe that employment, promotion, training, or transfer was denied him or that demotion, layoff or termination of employment was forced upon him in retaliation for opposition to alleged discrimination or because of his age, sex, race, color, national origin, religion, creed, political affiliation, or handicapped [handicapping] condition ... shall have the right to appeal directly to the State Personnel Commission.

N.C.Gen.Stat. § 126–36 (1993). N.C.Gen.Stat. §§ 126–36, –36.1. The plaintiff has pointed to no case law that has interpreted the state statutes as encompassing a prohibition against a "hostile work environment," and the court has been unable to locate any.

■ In this case, therefore, the Charge technically should have been filed with the EEOC in the first place, because no North Carolina law was pled or implicated. OAH's investigation and action, if any, on plaintiff's Title VII "claim over which it had no jurisdiction is simply without legal effect...." *Davis,* 48 F.3d at 140 (where Charge alleged no state law claim, OAH was without jurisdiction to take action on employment discrimination claim brought solely pursuant to Title VII).

The result of plaintiff's bringing this Charge before the OAH rather than the EEOC in the first instance is not material on the facts of this case, because OAH immediately forwarded a copy of the charge to the EEOC. Rather, OAH's efforts simply were of no effect and its findings, if any, are irrelevant to the exclusively federal claim. Although resort to "the complementary process of claim adjudication under state law" is required where applicable, *id.* at 141, that process was not applicable here because no "state law" applies to plaintiff's claim of discrimination by virtue of being subjected to a hostile work environment. As a result, this court perceives that nothing which occurred before the claim was transmitted to the EEOC is relevant to this case.

## PROPER DEFENDANT(S)

■ The defendants have pointed out, first, that, of the six named defendants, only one was named in the Charge of Discrimina-

tion—DEHNR.[3]  Failure to name a defendant in the Charge precludes the plaintiff from satisfying jurisdictional prerequisites for suit under Title VII as to such unnamed defendants.  *Mickel v. South Carolina State Employment Service*, 377 F.2d 239 (4th Cir. 1967).  Plaintiff's assertion in her response brief that Howes was "named in the affidavit/charge of discrimination and transmittal of the charge for investigation from EEOC to the Office of Administrative Hearings," reveals her misunderstanding of the functions of the various documents involved in this type of litigation.  The only place Howes' name appears in any of the documents plaintiff has appended to her response is in DEHNR's address on the Notice of Charge, prepared by EEOC Area Director, Walz.  Howes not only is not a named "employer" in the Charge, his name is not even mentioned therein.

■  Moreover, even though plaintiff mentioned the names of Eason, Cumbo and Tripp[4] in her affidavit, those defendants are not named as "employers."  Even had they been so named, plaintiff has pled neither facts nor legal conclusions to the effect that any of the individual defendants were her "employers" for purposes of Title VII.[5]  *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989) ("[a]n individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment."  (Citations omitted));  *modif. on other grounds*, 900 F.2d 27 (4th Cir.1990).

■  For the foregoing reasons, plaintiff cannot prove any set of facts that would support her claim for relief under Title VII as against defendants Howes, Griffin, Eason, Cumbo and Tripp.  Therefore, the Motions to Dismiss filed by those individual defendants are ALLOWED.

3.  Plaintiff also named "Environ., Health, & Natural Resources—Environ. Mgnt." in the Charge, but did not name that entity in the Complaint.

4.  Defendant Griffin is not mentioned in the Charge or in plaintiff's affidavit.

5.  Under Title VII, an "employer" is "a person engaged in an industry affecting commerce who

## TITLE VII CLAIM AGAINST DEHNR

■  Plaintiff did, however, name DEHNR as her "employer" in the Charge of Discrimination.  The only argument DEHNR has raised in support of its motion to dismiss is that plaintiff failed to advance allegations sufficient to charge workplace discrimination against the agency.  To prove her hostile work environment claim under Title VII, plaintiff must show (i) that the conduct in question was unwelcome;  (ii) that the harassment was based on race;  (iii) that the harassment was sufficiently pervasive or severe to create an abusive working environment, and (iv) that some basis exists for imputing liability to the employer.  *Id.* at 105 (citing *Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987)).

■  DEHNR contends that plaintiff cannot prove the third and fourth elements of the Title VII claim.  Specifically, DEHNR points out that plaintiff has described only two specific instances of harassment but has not alleged when they occurred.  As DEHNR notes, a valid Title VII work place discrimination claim arising from a "hostile work environment" theory depends on the totality of the circumstances allegedly creating the environment, including unwelcome conduct which is offensive, severe, pervasive, repeated and continuous—not isolated or occasional.  *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir.1992).  Co-workers' isolated, unrepetitive conduct will not maintain a hostile work environment claim.  *Brooms v. Regal Tube Co.*, 881 F.2d 412, 418 (7th Cir.1989).

■  The Charge filed with the OAH/EEOC alleged employment discrimination based on "race" (Black) "in violation of Title VII of the Civil Rights Act of 1964, as amended."  Plaintiff alleged in ¶ I of the

has fifteen or more employees …, and any agent of such a person …" 42 U.S.C. § 2000e(b).  "An individual qualifies as an "employer" if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment."  *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989) (citations omitted).

Charge that she had been "subjected to a hostile working environment of racial comments and derogatory statements." As noted above, because she had no state antidiscrimination law under which to prosecute her claim, Booth was not required first to bring her Title VII discrimination claim before the OAH. *Davis v. North Carolina Dept. of Correction,* 48 F.3d 134, 138 (4th Cir.1995). Nevertheless, plaintiff did initially file her Charge with the OAH, but the EEOC issued the Notice in which it advised the DEHNR that the OAH would be making the initial investigation.

■ Because plaintiff's Charge did not allege a state law claim, the deferral provisions of 42 U.S.C. § 2000e–5(c), and the 300-day time frame set forth in § 2000e–5(e)(1) did not apply. Thus, plaintiff was required to file her EEOC charge within 180 days of the alleged unlawful employment practices. Any alleged unlawful employment practices listed in the charge and Complaint which occurred before October 2, 1992—the 180th day preceding March 31, 1993, the date on which plaintiff filed her Charge—are outside the court's jurisdiction.

The only incident mentioned in the Charge which allegedly occurred after October 2, 1992, was the incident in which plaintiff was called in to answer for an error she had made in transmitting reports for Pat Hooper on March 19, 1993. Other incidents occurred, according to the Charge, between January and June, 1992. Therefore, only the charge relating to the March 19, 1993, incident is viable.

■ The Fourth Circuit Court of Appeals has described the burden a plaintiff must carry in order to demonstrate harassment sufficient to constitute a hostile work environment. Although the case addressed the issue in the context of sexual harassment, the analysis for alleged racial harassment is similar.

To determine whether the harassment was sufficiently severe or pervasive, the fact finder must examine the evidence both from an objective perspective and from the point of view of the victim.... We decline to focus solely on the plaintiff's subjective reaction, because "[a]n employee may not be unreasonably sensitive to his [or her] working environment.".... To succeed on a hostile environment claim, the plaintiff must first demonstrate that the harassment interfered with her ability to perform her work or significantly affected her psychological well-being.... If the plaintiff satisfies that burden, the fact finder must then decide whether the harassment would interfere with the work performance or significantly affect the psychological well-being of a reasonable person in the plaintiff's position.

*Paroline,* 879 F.2d at 105 (citations omitted).

■ In her complaint, plaintiff has alleged that, as a result of being subjected to what she contends was a hostile work environment, she suffered, *inter alia,* "past, present and future mental anguish, pain and suffering, humiliation, emotional distress and loss of enjoyment of life...." Complaint at ¶ 24. She also alleged:

In order to relieve the stress, the discrimination and intolerable working conditions, the Plaintiff was forced to take sick leave and consult with a therapist which included medications. As a result Plaintiff suffered losses in wages, employment opportunities, including promotions, retirement, loss of enjoyment and other benefits.

Complaint at ¶ 21. As a matter of law, the court concludes that these allegations are sufficient to survive a 12(b)(6) motion to dismiss with regard to the subjective aspect of the third element of her Title VII claim.

■ However, under the circumstances established by plaintiff's pleadings, including the fact that the factual predicate for the case is subject to the 180–day limit, the court can perceive no basis for the *objective* aspect of the element. That is, the evidence of a hostile work environment based on race is that plaintiff was called into her supervisor's office with regard to her failure to attach cover letters to nine reports as directed. As traumatic and humiliating as that incident may have been to Ms. Booth, it simply does not implicate the type or degree of "harassment" sufficient to satisfy the requirement that the psychological well-being or work performance of a reasonable person would be

significantly affected thereby. *Cf. Paroline v. Unisys Corp.,* 879 F.2d at 105–06 (genuine issue of material fact on issue of effect on reasonable person when plaintiff's evidence tended to show defendant's "unwanted sexual touchings and innuendo escalated into an assault and battery;" "reasonable person could especially fear [defendant] upon discovering, as [plaintiff] did, that [defendant] allegedly had pursued a campaign of harassment against other women in the office, and had failed to heed warnings from ... management to cease.... [Defendant's] sexual overtures might reasonably produce strong reactions of fear and intimidation because [he] held a superior position to [plaintiff's] in the company...."). *Compare Carter v. Ball,* 33 F.3d 450 (4th Cir.1994) (display of a poster potentially offensive to African–American employees, along with joking comments of supervisor, not acts of racial harassment severe and pervasive enough to create "hostile work environment") *with Daniels v. Essex Group, Inc.,* 937 F.2d 1264 (7th Cir.1991) (African–American male plaintiff made sufficient showing where life-sized dummy with black head and bloody overalls hung in doorway near his workplace for over 24 hours despite his report to supervisor; "KKK" and racial slurs directed to plaintiff written on workplace bathroom walls; two co-workers threatened to injure plaintiff and his son; someone fired bullet into plaintiff's home at 2:30 a.m.).

Furthermore, the incident of March 19, 1993, during which plaintiff was reprimanded for her error in transmitting important reports for Ms. Hooper in no way implicates race as a motivation for the reprimand. Plaintiff has not denied that she did, in fact, fail to mail out Ms. Hooper's reports as she had been instructed to do.

The court concludes that plaintiff's complaint fails to state a claim upon which relief may be granted under Title VII for racial harassment by virtue of being subjected to a hostile work environment, because she has failed to allege facts which, if proved, would demonstrate racial harassment sufficiently pervasive or severe to create an abusive working environment. Therefore, DEHNR's Motion to Dismiss the Title VII claim is ALLOWED. Rule 12(b)(6), Fed. R.Civ.P., and that claim is DISMISSED.

### PENDANT STATE LAW CLAIMS

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the remaining state law claims. Those claims are, therefore, also DISMISSED.

SO ORDERED.